**A–C INV. ASS'N, Unincorporated, v. HELVERING, Commissioner of Internal Revenue.**

**No. 5856.**

Court of Appeals of the District of Columbia.

Argued Oct. 12, 1933.

Decided Nov. 13, 1933.

R. C. Fulbright and John C. White, both of Washington, D. C., for petitioner.

G. A. Youngquist, Sewall Key, Carlton Fox, C. M. Charest, and Walter L. Barlow, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a tax case, and it is here on petition to review a decision of the Board of Tax Appeals entered November 5, 1931. A condensed statement of the Board's findings is as follows:

Petitioner operates in Houston, Tex. It is not incorporated, but had a constitution and by-laws in which the purposes and objects of its organization are set forth. It began to function in 1920. Article II of its constitution provides:

"This association is formed by the employees of Anderson, Clayton & Co. of Houston, Texas, and affiliated organizations for the purpose of providing investment fund for the mutual benefit of the employees contributing thereto."

Article III.

"Membership shall consist of units or shares [deposits] of a par value of ten dollars ($10.00) each. These units may be purchased by any employee of Anderson, Clayton & Co. [Each deposit of $10.00 was equal to one unit.] Units are purchasable only for cash and memberships are not transferable."

At the time of organization the employees of Anderson, Clayton & Co. (a large cotton corporation with hundreds of employees) were investing their savings in speculative oil stocks of doubtful value. To avoid the losses which it was recognized would likely ensue from this class of investment and to provide an opportunity to them to deposit their funds in a central agency for security and for investment, the organization was effected. The control was lodged in an executive committee consisting of nine contributing members elected annually. This committee was required to hold meetings at least once in each quarter and was authorized to use the deposits of members to make loans and investments in accordance with by-laws of the association. It was charged with the duty of electing a president, vice president, and secretary-treasurer from its own members. At the annual or other meetings of the association, all members might vote in person or by proxy, and each member was entitled to one vote for each of the units described in article III of the con-

stitution standing in his name. Membership was restricted to employees of the cotton corporation and its affiliates. No member could deposit in excess of $1,200 (120 units) annually. The organization issued passbooks similar to those used by savings banks, in which were noted all deposits, each $10 deposit being equal to one unit or to one vote in stockholders' meetings. Deposits could be withdrawn, not by check, but by entry in the passbooks of the withdrawal, and the memberships evidenced by the passbooks were not transferable. The officers received no salary, and the organization's place of business was in the office building of the cotton company which furnished rent free. The membership increased from 36 at organization to 444 in 1927, and the deposits from less than $10,000 in the early period to more than $800,000 in 1928. The assets consisted of real estate notes purchased through trust companies and trust departments in banks, stock in building-loan associations, first mortgage loans made direct to borrowers, a comparatively insignificant amount loaned to members on passbooks, and cash to meet withdrawals of deposits. The association loaned to its members on first mortgage notes in some instances 80 per cent. of the cost of homes built by such members. Its average earnings were slightly in excess of 7 per cent. Severance of relations with the cotton company terminated the voting rights of members of the association at annual meetings. All of the earnings were prorated quarterly on the basis of individual deposits. On the back of the passbook issued by petitioner to depositors was the following legend: "The object of this association is to promote habits of thrift, and create a spirit of cooperation and mutual interest among the employees of Anderson, Clayton & Co., and to provide a means of profitable investment of savings."

Petitioner annually advised each of its members as to what his earnings from the institution had been in order that he might report them for individual income tax purposes. In the third year of its operation, it issued a circular to its members in which it stated its objects and policies as follows: "This Association is an unincorporated mutual savings institution. Funds received from members in payment for units of interest are invested in conservative real estate mortgage and high-class bonds." The methods of operation were modeled upon those of stock savings banks operating in Houston, except that interest was distributed entirely on deposits, and no salaries were paid and no certificates of stock issued. Passbooks for deposits were not transferable. A reserve of 15 per cent. in cash was maintained to meet withdrawals.

The question in the case is, Was petitioner a "mutual savings bank not having a capital stock represented by shares" so as to entitle it to exemption from taxation under section 231 (2) of the Revenue Act of 1921, 1924, and 1926 (42 Stat. 253; 43 Stat. 282; 44 Stat. 39, 26 USCA § 982 (2)? The Commissioner held that the petitioner was not exempt, and the Board of Tax Appeals sustained the Commissioner, holding that petitioner was an association in the nature of a corporation and not a mutual savings bank, and consequently was not entitled to exemption. The Board apparently relied on Sears, Roebuck & Co. Employees' Sav. & Profit-Sharing Pension Fund v. Commissioner (C. C. A.) 45 F.(2d) 506.

The Commissioner insists here that petitioner, both by reason of its structure and by the fact that it is doing business like a corporation, is an "association" within the meaning of section 2 (2) of the Revenue Act of 1921 (42 Stat. 227), which provides that the term "corporation" shall include associations, joint-stock companies, and insurance companies.

The question we have to decide is not without difficulty, but, after careful consideration, we have reached the conclusion that within the intent of Congress, as expressed in the exemption to which we have called attention, petitioner is a mutual savings bank whose income is nontaxable. At the time of its organization, the then departmental construction of the statutory exemption undeniably placed petitioner within the exempt class. See O. D. 528, 2 C. B. 207; and O. D. 703, 3 C. B. 235. In the latter of these decisions, it was held that an association of the employees of N. Company, formed for the purpose of enabling its members to save and borrow money, was exempt as a mutual savings bank. There, as here, membership was limited to employees who selected a board of trustees to manage their affairs. Each member was permitted to subscribe to from one to twenty-five shares of stock represented by certificates of deposit, and was entitled to the return of the money paid in and the earnings thereon at the end of the year, or could allow both to remain on deposit. Members were also permitted to borrow from the association. The language of the decision is as follows:

"Held that the shares of stock sold by the association are merely the means to assist the members in accumulating their savings and that they do not constitute capital stock within the accepted business meaning of that term.

The dividends paid thereon are in reality interest on deposits (see 28 Op. A. G. 189; 31 Id. 176); and the association is exempt under section 231 (2) of the Revenue Act of 1918 as a mutual savings bank not having a capital stock represented by shares."

The decision first above mentioned is equally apt. However, after the 1921 act (which was in all respects similar to the 1918 act, so far as is pertinent), a contrary decision was made, being S. M. 1697, III-1 C. B. 248; and, after the 1924 act, likewise similar, another, being S. M. 2268, III-2 C. B. 208. Too great reliance may not, therefore, be placed upon these departmental rulings as indicating a uniform departmental construction, and we must have recourse to the facts as we find them to lead us to the decision we should reach.

It is conceded by the government in the brief and in the argument that, in order to come within the definition of savings banks, such institutions as petitioner need not be incorporated. It is likewise conceded that it is not necessary that they should be under public supervision unless, in either case, a state statute so requires. And it is finally conceded that there was no statute in Texas requiring such an institution to be incorporated or to submit to supervision.

We must therefore look for a definition of "savings bank" to those decisions rendered prior to the policy adopted by some of the states of requiring or permitting that they be chartered as an ordinary commercial corporation is. A case in point is Huntington v. Savings Bank, 96 U. S. 388, 24 L. Ed. 777. There the Supreme Court, defining the basic characteristics of savings banks, said (page 394 of 96 U. S., 24 L. Ed. 777): "Its purpose is rather to furnish a safe depositary for the money of those members * * * disposed to intrust their property to its keeping. It is somewhat of the nature of such corporations as church-wardens for the conservation of the goods of a parish, the college of surgeons for the promotion of medical science, or the society of antiquaries for the advancement of the study of antiquities. Its purpose is a public advantage, without any interest in its members." The opinion further points out that a savings bank's powers are to receive deposits for the use and benefit of the depositors, dividing the income or interest of all deposits among its depositors, and that, in England, it was intended to be quasi benevolent and to hold out no encouragement to speculative dealing or commercial trading. Grant's Law of Bankers, defining savings banks as institutions in which the bank derives no benefit from the deposit or the produce thereof, is quoted and approved, and it is said that such were the savings banks in England under the statutes of 9 George IV, and that very many such exist in this country. In conclusion the Supreme Court says: "Indeed, until recently, the primary idea of a savings bank has been, that it is an institution in the hands of disinterested persons, the profits of which, after deducting the necessary expenses of conducting the business, inure wholly to the benefit of the depositors, in dividends, or in a reserved surplus for their greater security."

And again in Mercantile Nat. Bank v. New York, 121 U. S. 138, at page 161, 7 S. Ct. 826, 838, 30 L. Ed. 895, the court said: "They [savings banks] are, what their name indicates, banks of deposit for the accumulation of small savings belonging to the industrious and thrifty. To promote their growth and progress is the obvious interest and manifest policy of the state." See, also, Bank of Redemption v. Boston, 125 U. S. 60, at page 68, 8 S. Ct. 772, 31 L. Ed. 689.

It was doubtless this conception of the purposes of such institutions which has led Congress in nearly all the taxing statutes to place them among the exempt. All the revenue acts here in question make the exemption apply to "mutual savings banks not having a capital stock represented by shares."

Similar, or nearly similar, language may be found long before the passage of the Sixteenth Amendment. The Act of June 30, 1864, c. 173, § 110 (13 Stat. 277, 278), imposed a tax on deposits with any person, bank association, company, or corporation engaged in banking, except savings banks having no capital stock whose business is confined to receiving deposits and loaning the same on interest for the benefit of depositors only and which do no other business of banking. By the Act of July 13, 1866, c. 184, § 9, 14 Stat. 101, 137, deposits in associations known as provident institutions, savings banks, etc., having no capital stock, etc., were exempt from the tax. The provisions of the act of 1864, to which we have referred, were discussed by the Supreme Court in Bank for Savings v. Collector, 3 Wall. (70 U. S.) 495, 18 L. Ed. 207. The statute provided, as we have just stated, that "any savings bank" as therein described should not be liable to pay for a license as a banker. The savings bank in that case was incorporated, not for private gain, but to encourage habits of industry and economy, etc., by savings from the earnings of tradesmen, mechanics, laborers, etc. It had

no shareholders or corporators entitled to participate in its profits. The corporators were trustees for the time being and managed the business and were prohibited from accepting pay for their services. All the profits of the business were divisible ratably semiannually among the depositors. Deposits were entered in a passbook and were withdrawable only on stated days in the year and upon surrender of the passbook. The managers had power to invest in government and state bonds and to lend upon secured unincumbered real estate. Speaking of the exemption proviso, the Supreme Court said (page 513 of 3 Wall., 18 L. Ed. 207): "Beyond all controversy the proviso, while it continued in force [it had then been repealed], had the effect to exclude the corporation complainants from the operation of the substantive words of the section." Likewise speaking to the nature or character of the corporation in that case, the court said that the fact that it had the right to receive deposits and to loan the same on interest for the benefit of the depositors brought it within the category of banking as defined in the section in question; in other words, that the purposes we have named and their pursuit made it a banking institution and, because of their limits, a savings bank.

Another case in the Supreme Court throwing light on the point is Oulton v. German Savings & Loan Soc., 17 Wall. (84 U. S.) 109, 110, 21 L. Ed. 618. In that case the court had under consideration the amendment to the act of 1864 passed July 13, 1866, taxing deposits in bank. The question was whether the institution there concerned should be regarded as a bank within the intent of the act which provided: "That every incorporated or other bank, and every company having a place of business where credits are opened by the deposit * * * of money or currency subject to be paid * * * upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange or promissory notes * * * shall be regarded as a bank." Section 9 (14 Stat. 115). The opinion, after referring to the fact that the act itself exempted savings banks, said: "Unrestrained by the proviso, it is quite clear that the bank would fall within the body of the section and be subject to the tax which the section levies, as the managers of the institution have a place of business where credits are opened by deposit, or collection of money or currency, subject to be paid or remitted by check or draft, or represented by certificates of deposit. Attempt is made to controvert the proposition that the money deposited is represented by certificates of deposit, or that it is subject to check or draft, but it is quite clear that the pass-book furnished to the depositor performs the same office as the certificate, check, or draft, as between the person making the deposit and the bank, showing to the entire satisfaction of the court that the evidence brings the bank within the material words of the section, and that the framers of the act intended to recognize the well-known fact that there are banks of deposit without authority to make discounts, or to issue a circulating medium."

The effect of these two decisions, in our view, is an authoritative finding that organizations, whether incorporated or not, and by whatever name called, formed to receive deposits and lend the same for the benefit of its depositors with an obligation to repay the amount deposited when demanded, whether by check or by surrender of a passbook, and doing no other banking business and having no capital stock, are nevertheless banks within the meaning and intent of the taxing laws as of that time, and, in cases where the deposits are loaned or invested for the sole benefit of the parties making the deposits without profit or compensation to the association or to anybody else, are savings banks entitled to the benefits of the exemption.

And this seems to us to be equally true as of the present time and to be recognized by the Revenue Department of the government in the Treasury Regulations now extant. See Regulations 65, 69, and 74. These regulations, which cover and interpret, respectively, the income tax laws of 1924, 1926, and 1928, provide in the same language, under the title "Mutual Savings Banks," as follows:

"In order that a corporation will be entitled to exemption as a mutual savings bank, it must appear that it is an organization (1) which has no capital stock represented by shares, and (2) whose earnings, less only the expenses of operation, are distributable wholly among the depositors. If it appears that the organization has shareholders who participate in the profits, the organization will not be exempt from income taxation under the statute." See Regulations 65, art. 513; Regulations 69, art. 513; Regulations 74, art. 523.

This rule fits precisely the condition of petitioner here, except that it is not a corporation, but as to that, as we have already remarked, the government concedes that an unincorporated society or institution is equally within the terms of the exemption statute as a corporation. This was also decided in the

case of Oulton v. Savings Institution, supra, where it is said at page 116 of 17 Wall., 21 L. Ed. 618: "Associations engaged in moneyed transactions, whether incorporated or not, having a place of business where credits are opened by the deposit or collection of money, * * * are regarded as banks."

Congress has seen fit since the passage of the Sixteenth Amendment to exempt certain organizations from the payment of income tax. Among these are labor, agricultural, and horticultural associations, fraternal societies, mutual building associations, cemetery companies, clubs, etc., and savings banks. The inclusion of savings banks, as we have shown, is no more than a continuation of a policy adopted originally in the enactment of the excise tax statutes. It was the intention of the Congress then, as now, to stimulate the development of savings and thrift among the less well-to-do of the population by encouraging the formation of savings societies, and there was not then in the excise tax statutes, nor is there now in the income tax statutes, any provision or regulation confining such societies to incorporated or regulated bodies. Petitioner's business and financial structure was without shares of capital stock, its membership was represented by deposits (called units) entered on a passbook and not transferable, the withdrawal of deposit and interest was secured, unlimited liability as to officers and depositors followed as of course, and quarterly distribution of earnings was provided, and finally its management was without cost or expense. In all these respects it comes precisely within the language and intent of the statute.

But it is argued on behalf of the Commissioner that, because it is not an organization for public use—in other words, because it has a private rather than a public character—it cannot be denominated a bank, and therefore is something else not within the exemption of the statute. The basis of this is that petitioner's facilities are not open to the accommodation of the general public, that its banking quarters are located in conjunction or proximity with the offices of the cotton company, and its members limited to the employees of a single corporation and its subsidiaries and affiliates. Because of this it is insisted it was not intended by Congress to exempt it from the payment of the tax; but the argument is not convincing. It cannot be claimed it was intended by Congress to exclude from the privileges of the exemption a savings bank organized by, and confined to, farmers, or to farmers of a particular locality, or to persons engaged in a particular line of business.

There is no restriction as to personnel or membership. There is nothing in the language of the statute to indicate such a purpose, and the statute is broad enough to include all organizations, corporate or private, local or general, sectarian or nonsectarian, agricultural or business, which embrace and are restricted to the attributes of a mutual savings institution.

That petitioner is not a corporation is obvious; nor is it a trust, because there was no original fund to administer; nor is it an association in the nature of a corporation, though in many aspects it may resemble a corporation.

But the question whether it is or is not a corporation is not the issue, because the statute does not make that the test. The question is whether it is a savings bank, and the answer to that question depends, not upon its name or upon its incorporation or nonincorporation, but more particularly, as was said by the Supreme Court in Weiss v. Stearn, 265 U. S. 242, 254, 44 S. Ct. 490, 492, 68 L. Ed. 1001, 33 A. L. R. 520, "by viewing what was actually done." And the unescapable answer to this is it was organized to do and did do all the things a mutual savings bank, as that term was used by Congress, would do, and likewise was neither organized to do nor did do any of the things which would change that nature to another. In these conditions, it would be to substitute the shadow for the substance to say it was something else because of its name, its location, or its limitations of membership.

Reversed.