**WATROUS et al. v. DISTRICT OF COLUMBIA.**

**HOSMER v. DISTRICT OF COLUMBIA.**

Nos. 8313, 8314.

United States Court of Appeals for the District of Columbia.

Decided March 9, 1943.

Howard Hosmer, pro se, petitioner in No. 8314.

George D. Watrous, Jr., pro se, petitioner in No. 8313, submitted the case on his brief and adopted the oral argument of petitioner in No. 8314.

Mr. Glenn Simmon, Assistant Corporation Counsel, D.C., of Washington, D. C., with whom Messrs. Richmond B. Keech, Corporation Counsel, D.C., and Vernon E. West, Principal Assistant Corporation Counsel, D.C., both of Washington, D. C., were on the brief, for respondent in each case.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

The single question here is: Has the Board of Tax Appeals for the District of Columbia authority to reduce an assessment of real property made by the Board of Assistant Assessors and approved by the Board of Equalization and Review in the absence of a showing that the assessment is capricious or arbitrary or so at variance with the full and true value as to be actually or constructively fraudulent.

The statutory mechanics for real property assessment must be discussed in order that the status of the Board of Tax Appeals in the assessment picture may be portrayed. The Commissioners of the District of Columbia appoint the eight-man Board of Assistant Assessors.[1] Five of its members are designated by the Assessor of the District of Columbia to assess real property. These Assistant Assessors annually determine and report to the Assessor "the amount, description, and value of the real property subject to be listed for taxation in the District of Columbia."[2] A com-

[1] Act of Aug. 14, 1894, 28 Stat. 282, c. 287, § 2, as amended by the Act of July 3, 1926, 44 Stat. 832, c. 759, § 1, D.C. Code (1940) § 47—604. The number of Assistant Assessors was later increased from six to eight. (Hearings before the Subcommittee of the House Committee on Appropriations on the District of Columbia Appropriation Bill (1928) 84.)

[2] D.C.Code (1940) § 47—706.

plaint in respect of their assessment of real property may be filed with a "Board of Equalization and Review", composed of the Assessor, the Deputy Assessor, and the eight Assistant Assessors, whose duty it is "to fairly and impartially equalize the value of real property made by the board of assistant assessors as the basis for assessment." [3] Authority is given the Board of Equalization and Review to increase or reduce the valuation.[4]

The Board of Assistant Assessors initially valued each lot involved here at $4,008. Each of the petitioners filed a complaint with the Board of Equalization and Review. It fixed the valuation of each lot at $4,008. Thereupon the petitioners appealed as a matter of right to the Board of Tax Appeals in accordance with Section 47—2405, District of Columbia Code (1940), which provides, in part: "Any person aggrieved by any assessment, equalization, or valuation * * * may * * * appeal from such assessment, equalization, or valuation in the same manner and to the same extent as provided in sections 47—2403, 47—2404: *Provided, however,* That such person shall have first made his complaint to the Board of Equalization and Review respecting such assessment as therein provided."

Section 47—2403 of the District of Columbia Code provides: " * * * The board [Board of Tax Appeals] shall hear and determine all questions arising on said appeal and shall make separate findings of fact and conclusions of law, and shall render its decision thereon in writing. The board may affirm, cancel, reduce, or increase such assessment."

In these cases the Board of Tax Appeals held hearings at which evidence for the petitioners and for the District of Columbia was introduced. It made findings of fact that the value of each lot was $3,500, but concluded as a matter of law that it did not have the power or authority to reduce the assessments, stating in its opinion that " * * * if it believed it had the authority to reduce the assessment in this proceeding it would not hesitate to do so in accordance with its findings as to valuation of the lots here involved."

The action of the Board of Tax Appeals was in conformity with its prior interpretation of the statute that no authority was lodged in it to reduce the valuation of the Board of Equalization and Review except in those cases where the assessment was fraudulent, arbitrary or capricious. And in the instant cases the Board of Tax Appeals did not think the difference between the assessed valuation and the real value in money was sufficiently great to justify its holding that the assessments were fraudulent, arbitrary or capricious.

It is clear to us that this restraint by the Board of Tax Appeals in proceedings of this character is self-imposed, and that such limitation upon its power and authority cannot be found within the four corners of the statute.

In speaking of the powers of the Board of Tax Appeals, Congress used clear and unequivocal language: "The board [Board of Tax Appeals] may affirm, cancel, reduce, or increase such assessment." [5] Each lot was assessed at $4,008. After a full hearing the Board of Tax Appeals found the value in money of each lot to be $3,500. With this finding of fact, the assessment, should it stand, would be in direct contravention of the language of the assessing statutes that real property should be listed for taxation "at their value in money".[6]

The District, however, contends that the valuations fixed by the Board of Equalization and Review cannot be attacked except for fraud. It concedes that it is not necessary to prove actual fraud, but it urges that constructive fraud must be established to upset the valuation of the Board of Equalization and Review; that mere excessive valuation does not of itself establish fraud; that the excessive valuation may be due to inadvertence or errors of judgment, in which case it will not be vitiated; that constructive fraud is shown when there is such a vast discrepancy between the assessed value and the true value of the property as will shock the conscience of the reviewing court or board; and that such variance must be so tremendous as to startle the imagination and cannot be shown to be a consequence of inadvertence or poor judgment.

■■ In support of its contention that the scope of review is confined to such a narrow limit, the District has cited authorities of two classes: first, those where-

---

[3] Id. at § 47—708.

[4] Ibid.

[5] D.C.Code (1940) § 47—2403.

[6] " * * * each lot and tract and improvements thereon shall be entered upon the tax list at their value in money; * * *." D.C.Code (1940) § 47—708.

in the taxpayer has *instituted an action* in a state or federal court to enjoin the collection of a tax upon an assessment deemed to be excessive; [7] second, those wherein the collecting authority has *instituted an action* in a state court to recover delinquent taxes, and the taxpayer has set up the defense of overassessment.[8] In either instance, however, the rule advanced by the District has been applied to an original cause of action in a duly constituted court, and merely bespeaks the general recognition by the courts of an administrative determination which, in the absence of legislative direction, ordinarily may not be upset except for fraud, arbitrariness or capriciousness. In these cases cited by the District, the court in which the taxpayer seeks relief from overassessment is not in the direct current of the assessing authority. In the District of Columbia, however, the Board of Tax Appeals is made, by statute, a constituent member of the assessing authority. It is not a court. It is an administrative agency, provided by Congress, to which a taxpayer seeking relief may appeal an alleged excessive assessment of the Board of Equalization and Review. As such it must function in accord with the legislative directions. Congress delineated the power and authority of the Board of Tax Appeals in clear language, to wit:

" * * * The board [Board of Tax Appeals] shall hear and determine *all questions* arising on said appeal and shall make separate findings of fact and conclusions of law * * *. *The board may affirm, cancel, reduce, or increase such assessment.*" [9] [Italics supplied]

In Crawford v. Polk County,[10] a statute provided for *an appeal* as of right to the circuit court of the county from an assessment made by the Board of Equalization. Plaintiffs, there, instituted an original bill in equity in the district court instead of proceeding by appeal as provided by the statute. The district court was constrained to dismiss the petition for this procedural reason. In affirming the action of the trial court, however, the Supreme Court of Iowa, in denying that the scope of review under the statute was confined to assessments of a fraudulent character, stated that there was "no limitation as to the character of the errors subject to correction" with which the circuit court might deal when an appeal from overvaluation was properly before it. This dictum is illustrative of the duty and disposition of *a court* when it is faced with a statute which leaves its appellate jurisdiction unrestricted. Clearly, an administrative agency, in these circumstances, would be obliged to accept a commensurate responsibility and afford an equivalent scope of review to the taxpayer. *A fortiori*, when the statute conferring the appellate jurisdiction upon that administrative agency not only contains no language delimiting the scope of review, but *expressly* imposes the duty to "affirm, cancel, reduce, or increase" the assessment, the power of the Board of Tax Appeals to reduce the assessment here is beyond question.

In arriving at our conclusion, we feel there is no need to resort to the legislative history of the statute. Were such a course thought to be necessary, the Report of the Committee [11] accompanying the measure establishing the Board of Tax Appeals, together with the statement of Representative Nichols, who was in charge of the bill, may be cited for purposes of illumination. The Report of the Committee took note of the fact that the only course previously open to a taxpayer who claimed that his property was overassessed by the Board of Assistant Assessors was to present his com-

---

[7] Illinois Central R. Co. v. Greene, 244 U.S. 555, 37 S.Ct. 697, 61 L.Ed. 1309; Central of Georgia R. Co. v. Wright, 207 U.S. 127, 38 S.Ct. 47, 52 L.Ed. 134, 12 Ann.Cas. 463; Western Union Telegraph Co. v. Taggart, 163 U.S. 1, 16 S.Ct. 1054, 41 L.Ed. 49; Pittsburgh, etc., Ry. Co. v. Backus, 154 U.S. 421, 14 S.Ct. 1114, 38 L.Ed. 1031; Birch v. Orange County, 186 Cal. 736, 200 P. 647 (although a suit on the "law side" of the court, a statutory action (not an appeal) was begun by the taxpayers to recover for an amount paid under protest); Lambrecht v. Wilson, 290 Ill. 547, 125 N.E. 267; Danforth v. Livingston, 23 Mont. 558, 59

P. 916; Northern Pac. R. Co. v. Pierce County, 55 Wash. 108, 104 P. 178; State v. Board of Review of City of Fond du Lac, 231 Wis. 303, 285 N.W. 784 (by writ of certiorari).

[8] People ex rel. Little v. St. Louis Electric Bridge Co., 290 Ill. 307, 125 N.E. 280; People ex rel. Rogers v. Odin Coal Co., 238 Ill. 279, 87 N.E. 410; Keokuk & H. Bridge Co. v. People ex rel. Bertschi, 161 Ill. 514, 44 N.E. 206.

[9] D.C.Code (1940) § 47—2403.

[10] 112 Iowa 118, 83 N.W. 825.

[11] H. R. Rep. No. 2105, 75th Cong., 3d Sess. (1938).

plaint to the Board of Equalization and Review, composed of the Assessor, the Deputy Assessor, and the eight Assistant Assessors. We have seen that five Assistant Assessors originally fixed the valuation. They were members also of the Board of Equalization and Review. So the appeal from their valuation was heard by the Board of Equalization and Review, upon which Board they would sit, constituting fifty percent of the appellate body. From Representative Nichols' remarks on the floor of the House, one might infer that this was not thought to be much of an appeal. At least he stated that "It is really the most antiquated system I can imagine."[12] No language in the bill, in the Committee Report, or in debate, has been called to our attention giving an indication that Congress intended to limit the Board of Tax Appeals in affording redress for excessive assessments, in the manner the District contends.

The decisions are reversed and the cases remanded to the Board of Tax Appeals for further proceedings in conformity with this opinion.

Reversed.

---

[12] 83 Cong. Rec. 5243 (1938). Representative Nichols further stated: "Now, we simply provide that if there is anything *wrong* with his tax, under protest he pays the tax, of course, and then goes to the Board of Tax Appeals or Tax Review for his *redress*, if any he has, and if it is adjudged that the tax be refunded, of course, it is refunded. * * *" [Italics supplied.]