## HAMILTON NAT. BANK v. DISTRICT OF COLUMBIA.

### No. 9192.

United States Court of Appeals
District of Columbia.

Argued May 28, 1946.

Decided June 28, 1946.

844

Mr. Roger J. Whiteford, of Washington, D. C., with whom Mr. Philip S. Peyser, of Washington, D. C., was on the brief, for petitioner.

Mr. Harry L. Walker, Assistant Corporation Counsel, District of Columbia, of Washington, D. C., with whom Mr. Vernon E. West, Corporation Counsel, District of Columbia, and Mr. Chester H. Gray, Principal Assistant Corporation Counsel, District of Columbia, both of Washington, D. C., were on the brief, for respondent.

Before GRONER, Chief Justice and EDGERTON and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Petitioner is a national bank doing business in the District of Columbia. There are in the District other national banks and also banks incorporated under various state laws. Some of these banks, both national and state, have savings departments and pay interest to savings depositors. These same banks do a general commercial banking business.

Two pertinent statutes impose taxes on banks in the District of Columbia. One provides that every national bank and all other incorporated banks shall pay 6 per cent a year on their gross earnings.[1] The other provides that incorporated savings banks shall pay 4 per cent a year on their gross earnings less the interest paid to their depositors.[2] The first was enacted in 1902 and the second in 1904.

The local taxing authorities treat banks incorporated under state laws as incorporated savings banks and treat national banks as not savings banks. Petitioner protested its assessment, claiming the right to deduct from its gross earnings the interest paid its depositors. The Board of Tax Appeals for the District of Columbia affirmed the Assessor. Petition for review of that decision by this court was then filed.

Petitioner makes three contentions. The first is that interest paid depositors on savings accounts is deductible in computing gross earnings, under the doctrine of District of Columbia v. Georgetown Gaslight Co., 1916, 45 App.D.C. 63, and Chesapeake & Potomac Telephone Co. v. District of Columbia, 1943, 78 U.S.App.D.C. 53, 137 F.2d 674. In the Georgetown Gaslight Company case, this court held that the cost of raw materials used in manufacture is deductible from gross receipts in computing gross earnings. In the Telephone Company case, this court applied the same doctrine to the cost of telephone directories supplied subscribers by the company. But we are not disposed to extend the doctrine of those cases. Gross receipts, gross income, and net income are different concepts. We need not venture too far into the discussion which has engulfed the subject for a half-century.[3] Receipts differ from income as a matter of economic concept and constitutional importance, the former including capital and the latter not. Gross income becomes net by deductions. "Gross earnings" is not so certain in meaning but, generally speaking, means gross income. In this scheme of things, the cost of raw materials is eliminated from receipts to ascertain income, because income is gain and no gain is derived until cost of goods is recovered. In this same scheme of things, interest paid is, by established practice, a deduction from

---

[1] D.C.Code (1940) § 47—1701.
[2] D.C.Code (1940) § 47—1703.

[3] See 1 Mertens, Law of Federal Income Taxation (1942) c. 5.

gross income in the computation of net income. Interest paid by banks on savings accounts is so treated.[4] Petitioner's contention is, in ultimate substance, either that interest on savings accounts is an elimination from receipts in the computation of gross income, or that gross earnings differ from gross income in that items like this interest must be eliminated from the latter to ascertain the former. It argues that interest paid depositors is to a bank the cost of its raw material, i. e., money; or at least the same sort of an item as a telephone book to a telephone company. The rationale of the rule is difficult to state,[5] but we are not disposed to depart from the traditional treatment of the item. The same result is indicated by the provision of the Code here involved, which refers to "gross earnings, less the amount paid as interest to their depositors", when the deduction of interest was intended. We agree with the Board of Tax Appeals that this interest falls within the deductions from gross income or gross earnings in the computation of net income, rather than among the eliminations which must be made from gross receipts in order to ascertain income or earnings.

■ Petitioner's second contention is that the difference in treatment accorded by the taxing authorities to national banks and state banks is an illegal discrimination which voids the tax upon petitioner. It is apparent that the 1904 act was intended to subject incorporated savings banks to a tax different from the tax imposed on other incorporated banks, including national banks. This classification of banks by the Congress for tax purposes rested upon reasonable differentials and was, therefore, valid. The questions are three: Was the test used by the administrative officers for determining what is a savings bank proper? If improper, was the test so improper as to be invalid? If the administrative action is invalid, what, if any, remedy is available to a national bank?

■ We do not think that the simple ascertainment of whether a bank has a national charter or a state charter is a proper method of determining whether the bank is or is not an incorporated savings bank. The test should have some relation to savings deposits. If state banks engaged in the savings-account business and national banks did not, the nature of the charter might be an easy rule of thumb for identifying a savings bank, or might be an inevitable coincidence with the fact of being a savings bank. But such is not the case. National banks are fully authorized to receive savings deposits and to pay interest on them.[6] This petitioner has time and savings deposits as large as, if not larger than, the similar deposits of the state banks classified as savings banks for tax purposes. On the other hand, the state banks do a general commercial banking business just as do the national banks; none is engaged exclusively in receiving and investing savings deposits. The charter powers of the several banks, national and state, vary in detail, but appear to be substantially equivalent in respects pertinent here. All are under the same regulatory control, the Comptroller of the Currency.[7] The rates of interest paid savings depositors are "pretty much uniform". The evidence upon the hearing was that so far as commercial and savings accounts are concerned the business is identical. So that, so far as savings deposits are concerned, there is no difference between the national banks and the state banks. For that reason, we do not think that an administrative classification of state banks as savings banks, and national banks as not savings banks, is proper. As we said in Neild v. District of Columbia,[8] in discussing Congressional power, the selection for classification must "rest

---

[4] See U.S.Treas.Reg. 111, § 29.23(b)-1; First National Bank of Braddock, 1938, 38 B.T.A. 1244.

[5] For federal income tax purposes, cost of goods sold is determined for mercantile and manufacturing companies by the use of inventories. The Treasury includes as raw materials those which have been acquired for sale or which will physically become part of merchandise intended for sale. U.S.Treas.Reg. 111, § 29.22(c)-1. See Francisco Sugar Co. v. Com'r, 2 Cir., 1931, 47 F.2d 555; Burroughs Adding Machine Co. v. Commissioner, 1927, 9 B.T.A. 938.

[6] 12 U.S.C.A. § 371.

[7] D.C.Code (1940) § 26—101.

[8] 1940, 71 App.D.C. 306, 110 F.2d 246, 260.

upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed." As we said again, in A-C Inv. Ass'n v. Helvering,[9] discussing what is a savings bank under the federal income tax law, the answer is reached "by viewing what was actually done." Legally speaking, the test applied by the administrative authorities in the case at bar is arbitrary.

The next question is whether the administrative action is so improper as to be invalid. The equal-protection clause of the Fourteenth Amendment does not apply, that Amendment being directed to the states.[10] The Fifth Amendment, of course, does apply, but it contains no equal-protection clause. The Supreme Court has held as settled that a federal statute passed under the taxing power may be so arbitrary and capricious as to cause it to fall before the due-process clause,[11] and has intimated that discrimination, if gross enough, might invalidate an act of Congress as equivalent to confiscation and therefore void under the Fifth Amendment.[12] But we are not considering the validity of an act of Congress and need not go into the question whether Congress itself could provide a differential in tax for savings banks and in the same enactment define a savings bank as a bank with a state charter. The matter before us is the validity of an administrative action, and the scope of the power of classification by an administrator under a statute is obviously much less broad than is the power of the Congress in the first instance. While an interpretative administrative regulation consistent with the statute has great weight, one which "operates to create a rule out of harmony with the statute, is a mere nullity."[13] We do not think that an administrative officer can restrict a statutory term such as "incorporated savings bank" by a definition having no relation to savings deposits or accounts. He cannot eliminate, by administrative definition, from the statutory provision some institutions identical in all respects related to savings deposits with institutions included in his definition. His attempt to do so is invalid as not in harmony with the statute.

In the view which we take of the case, it is not necessary for us to define an incorporated savings bank. "Until recently," the Supreme Court said in 1878,[14] the primary idea of a savings bank was an institution in the hands of disinterested persons, the profits of which inured wholly to the benefit of the depositors. It was, said the Court, quasi benevolent. That case concerned a savings bank in the District of Columbia incorporated by an act of Congress, and called the "National Union Savings-Bank of the District of Columbia". In 1883 the Supreme Court of the District of Columbia considered a case[15] in which an incorporated savings bank was converted by its trustees into a national banking association, pursuant to Section 5154 of the Revised Statutes, 12 U.S.C.A. § 35, and an act of June 30, 1876.[16] The latter act provided that "all savings or other banks now organized, or which shall hereafter be organized, in the District of Columbia, under any act of Congress, which shall have capital stock paid up in whole or in part, shall be subject to all the provisions of the Revised Statutes, and of all acts of Congress applicable to national banking associations, so far as the same may be applicable to such savings or other banks."[17] The court thought that there might be a question whether that act did not, by its own oper-

9 1933, 62 App.D.C. 339, 68 F.2d 386, 390.

10 Wight v. Davidson, 1901, 181 U.S. 371, 21 S.Ct. 616, 45 L.Ed. 900.

11 Heiner v. Donnan, 1932, 285 U.S. 312, 326, 52 S.Ct. 358, 76 L.Ed. 772.

12 Steward Machine Co. v. Davis, 1937, 301 U.S. 548, 585, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; see Neild v. District of Columbia, supra.

13 Manhattan General Equipment Co. v. Com'r, 1936, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528.

14 Huntington v. National Savings Bank, 1878, 96 U.S. 388, 24 L.Ed. 777.

15 Keyser v. Hitz, 1883, 2 Mackey 473.

16 19 Stat. 64.

17 The quoted provision of the 1876 act was included in the 1901 Code, Section 713, but was omitted in an amendatory enactment of June 30, 1902, 32 Stat. 534. We have been unable to find any helpful legislative history relating to this amendment. Various statutes relating to national banks were extended to apply to savings banks in the District of Columbia by an act of March 4, 1933, 47 Stat. 1566, D.C.Code (1940) § 26—104.

ation, and without the necessity of any action by the banks, convert the savings banks in the District of Columbia at once into national banks, but said that the practical interpretation of the act had been for the banks themselves to take some action of conversion. Historically, therefore, in the District of Columbia there is no incongruity between savings bank and national bank.

We have now to consider the disposition of the case. The fact that the administrative classification of banks is invalid does not, of itself, determine whether all these banks having identical savings-deposit businesses are or are not incorporated savings banks within the meaning of the statute. Respondent contends, and the Board of Tax Appeals held, that petitioner could not complain of the discrimination because the banks favored by the administrative practice are not in the proceeding. That position is obviously without merit. The person discriminated against is really the only person who can complain of the discrimination. Certainly he is the only one who does.

While, as we have said, the equal-protection clause does not apply here, the course followed by the Supreme Court in disposing of cases wherein administrative action has been held invalid because of that clause, furnishes a guide for our action here. In Sioux City Bridge Co. v. Dakota County, 1923, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979, and again in Iowa-Des Moines National Bank v. Bennett, 1931, 284 U.S. 239, 52 S.Ct. 133, 76 L. Ed. 265, the Court, faced with this same dilemma, directed that the higher tax be reduced to the level of the favored taxpayers. Chief Justice Taft, in the former case, [260 U.S. 441, 43 S.Ct. 192] said that this should be done "even though this is a departure from the requirement of statute." He said: "The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

The difference in treatment accorded the national banks and the state banks, reflected in the record in the case at bar, is not a mistake or an error in judgment; it was shown to be consciously done, and in that sense intentional, and systematic.[18]

But our relation to the Board of Tax Appeals of the District of Columbia is more flexible than the relationship of the Supreme Court to the courts of the several states, and permits of directives as well as the usual appellate dispositions. The Board is "a constituent member of the assessing authority." [19] Our power to review its decisions is "as under the equity practice in which the whole case, both facts and law, is open for consideration",[20]—"the scope of a review of an equity court." The definition of "incorporated savings bank" is not merely the temporary disposition of the single assessment in the present proceeding but obviously concerns the taxation of the entire group of local banks as a continuing matter. The interests of all the banks are involved. The facts of the situation in 1904 when Congress enacted the special statute relating to incorporated savings banks, are pertinent. The various statutes which interrelate the local savings banks with the national banking laws would appear to have a bearing. The Comptroller of the Currency, under whose supervision all these banks operate, may have important interests in the subject or views which may be valuable. This factual data is by no means complete in the record before us. Moreover, the matter is of the sort which should first be crystallized by administrative action. The decision of the Board in this case will be reversed and the case remanded, with instructions to cancel the present assessment unless the tax Assessor, upon a reexamination of the entire subject of taxing banks under these statutes, removes the discriminations presently existing, in which latter event the

[18] Charleston Fed. Sav. & L. Ass'n v. Alderson, 1945, 324 U.S. 182, 190, 65 S. Ct. 624, 89 L.Ed. 857.

[19] Watrous v. District of Columbia, 1943, 77 U.S.App.D.C. 295, 135 F.2d 654, 656.

[20] District of Columbia v. Pace, 1944, 320 U.S. 698, 64 S.Ct. 406, 408, 88 L.Ed. 408.

validity of his further proposals may be considered.

Petitioner's third contention is that the proposed tax is a discrimination violative of Section 5219 of the Revised Statutes.[21] But that statute is addressed to the legislatures of the states, and the statutes with which we are concerned are acts of the Congress. Section 5219 is of value here as an indication of Congressional policy. To that extent petitioner's contention is sound. Our view of the case is in accord with that policy. But the section is not controlling in terms. Congress could, if it chose, tax national banks without regard to its provisions.

Reversed and remanded for further proceedings in accordance with this opinion.