**DISTRICT OF COLUMBIA, Petitioner,**

v.

**Allen BERENTER et al., Respondents.**

**Allen BERENTER et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA,
Respondent.**

**Nos. 23997, 24003.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1971.

Decided July 25, 1972.

Mr. Robert E. McCally, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Hubert B. Pair, Acting Corp. Counsel at the time the brief was filed, and Henry E. Wixon, Asst. Corp. Counsel, were on the brief, for petitioner in No. 23997 and respondent in No. 24003. Mr. Charles T. Duncan, Corp. Counsel at the time the record was filed, also entered an appearance for petitioner in No. 23997 and respondent in No. 24003.

Mr. Jules Fink, Washington, D. C., for respondents in No. 23997 and petitioners in No. 24003.

Before TAMM and MacKINNON, Circuit Judges, and A. SHERMAN CHRISTENSEN,* Senior District Judge for the District of Utah.

MacKINNON, Circuit Judge:

On December 30, 1968, Allen Berenter, Allen Morris, Max Leder, and David Hornstein, the General Partners of Towne Towers Associates, a limited partnership, hereinafter referred to as "Taxpayers," filed a petition in the District of Columbia Tax Court to " . . . protest a Real Estate Tax Assessment for the fiscal year 1969 made pursuant to Section 47–708, District of Columbia Code." [1] The petition challenged the as-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. D.C.Code § 47–708 (1967) in part provides:

   [The Board of Equalization and Review] shall immediately proceed to equalize the valuations made by the board of assistant assessors so that each lot and tract and improvements thereon shall be entered upon the tax list at their value in money; and for this purpose they shall hear such complaints as may be made in respect of said assessments, and in determining them they may raise the valuation of such tracts or lots and improvements as in their opinion may have been returned below their value and reduce the valuation of such as they may believe to have been

sessed valuation proposed for the fiscal year 1969, as well as the 1969 assessment as equalized by the Board of Equalization and Review, of the Towne Towers Apartments and the Aristocrat Apartments, both of which are located in the District of Columbia.

The District of Columbia thereafter filed in the Tax Court a motion to dismiss the petition, on the ground that the District of Columbia Tax Court was without jurisdiction for the reason that Taxpayers had failed to pay *all* of the real estate taxes complained of prior to their filing of the December 30, 1968 petition. The Taxpayers had paid the first half of the real estate taxes for the 1969 fiscal year on September 30, 1968, but they did not pay the second half until March 26, 1969.[2] On June 19, 1969, the District of Columbia Tax Court denied the District of Columbia's motion to dismiss. Subsequently, the District filed its answer to the Taxpayers' petition, and, on October 10, 1969, Taxpayers filed a "Motion for Leave to Amend Petition," so that they could request that the Tax Court's decision be applied to 1970 and subsequent years until a reappraisal of the relevant properties by the District of Columbia was effectuated. The Tax Court deferred its ruling on Taxpayers' amendment motion, and the case was heard on the merits on October 20, 1969.

As the Tax Court stated in its decision, counsel for the Taxpayers and counsel for the District of Columbia stipulated that:

> * * * Mr. F. E. Diamond, a qualified fee appraiser in the District of Columbia, personally present at the hearing, would testify that in his expert opinion the appraised value of the Towne Towers Apartments for purposes of D. C. real estate tax for fiscal year 1969 is $1,173,250 and of the Aristocrat Apartments is $884,000,

rather than, respectively, $1,280,581 and $1,029,944 at which figures said properties were assessed. * * * [Joint Appendix at 114]

The District of Columbia presented no evidence and elected to stand on its "Motion to Dismiss," which was based upon the alleged lack of jurisdiction of the District of Columbia Tax Court to determine the case on the merits.

On January 13, 1970, the Tax Court handed down its decision in which it said:

> 1. Petitioners' [Taxpayers'] motion for leave to amend be, and hereby is, *denied.*

> 2. Respondent's [District of Columbia's] motion to dismiss, re-presented at the hearing herein, be and hereby is *denied.* The Ruling and Order on Motion to Dismiss issued June 19, 1969 is hereby incorporated herein by reference.

> 3. Petitioners shall have and recover from the District of Columbia the sum of $7,598.25 plus statutory interest, on account of excess taxes paid on the properties more fully described in the petition herein, for the fiscal year 1969. [Joint appendix at 115]

Thereafter, the District filed a petition for review by this court of the District of Columbia Tax Court decision, and Taxpayers filed a cross-petition for review of the same decision.

On March 26, 1970, we granted the motion of Taxpayers to consolidate the cross appeal and appeal. Subsequently, on April 24, 1970, the District filed a combined motion for summary reversal in Docket Number 23,997 and for summary affirmance in Docket Number 24,003. On May 4, 1970, Taxpayers filed their combined motion for summary affirmance in Docket Number 23,997 and

---

returned above their value to such sum as in their opinion may be the value thereof.

2. Under D.C.Code § 47–1209 (1967), "Real-estate taxes . . . [are] pay-

able semiannually in equal installments in the months of September and March. . . . ." Therefore, Taxpayers were not delinquent in their payment of the real estate taxes in question. *See* discussion in Part II of this opinion, *infra.*

for summary reversal in Docket Number 24,003. We denied these motions on July 31, 1970.

We now hold that the District of Columbia Tax Court was without jurisdiction to decide this case, due to the fact that Taxpayers had not paid *all* of the taxes assessed for the 1969 fiscal year, on the properties in question, prior to the time they filed their petition with the Tax Court.

### I

Before reaching the merits of the jurisdictional issue raised by the District of Columbia's appeal, we wish to point out a codification error appearing in D.C.Code § 47–2405 (1967), which was discussed by the Tax Court.

D.C.Code Section 47–2405 (1967) provided [3]:

§ 47–2405. Appeals of real estate assessments.

Any person aggrieved by any assessment, equalization, or valuation made pursuant to sections 47–708 and 47–709, may within ninety days after October 1 of the year in which such assessment, equalization, or valuation is made, appeal from such assessment, equalization, or valuation in the same manner and to the same extent as provided in sections 47–2404 and 47–2413: *Provided, however,* That such person shall have first made his complaint to the Board of Equalization and Review respecting such assessment as herein provided, except that, in case of increase of valuation of real property over that for the immediately preceding year, where no notice in writing of such increase of valuation is given the taxpayer prior to March 1 of the particular year, no such complaint shall be required for appeal.

Any person aggrieved by any assessment or valuation made in pursu-

ance of section 47–710 may, within ninety days after October 15 of the year in which said valuation or assessment is made, appeal from such assessment or valuation in the same manner and to the same extent as provided in sections 47–2404 and 47–2413: *Provided, however,* That if the taxpayer shall be notified in writing not later than September 1 of a particular year of the valuation of the real estate valued in accordance with section 47–710, such taxpayer shall first make a complaint to the Board of Equalization and Review respecting such assessment as herein provided.

Any person aggrieved by any assessment made in pursuance of section 47–711 may, within ninety days after April 15 of the year in which such assessment is made, appeal from such assessment in the same manner and to the same extent as provided in sections 47–2404 and 47–2413: *Provided, however,* That if the taxpayer shall be notified in writing not later than March 1 of a particular year of the valuation of the real estate valued in accordance with section 47–711, such taxpayer shall first make a complaint to the Board of Equalization and Review respecting such assessment as herein provided.

Any person aggrieved by any reassessment made in pursuance of section 47–712, may within ninety days after notice of said reassessment, appeal from said reassessment in the same manner and to the same extent as provided in sections 47–2403, 47–2404.

Any person aggrieved by a reassessment or redistribution made pursuant to section 47–716, may within ninety days after notice of such reassessment or redistribution, appeal from such reassessment or redistribution in the

---

3. D.C.Code § 47–2405 (1967), which was applicable with respect to Taxpayers' fiscal 1969 real estate taxes, with which we are herein concerned, was amended by section 161(a) (5) of the Act of July 29, 1970, Pub.Law 91–358, 84 Stat. 580, to substitute "six months" wherever "ninety days" appeared in the previous provision. [Effective date of amendment was February 1, 1971.] *See* note 9, *infra.*

same manner and to the same extent as provided in sections 47–2403, 47–2404.

■ Section 47–2405 was not enacted by Congress in the form in which it appears in the D.C.Code[4]; rather, it was compiled pursuant to 1 U.S.C. § 202 (1970). The Codifier's notes explain the basis for section 47–2405's compilation:

The five paragraphs of this section comprise, respectively, the last sentences of subsecs. (a), (b), (c), (d), and (e) of section 5 of the act Aug. 17, 1939, title IX. Such section 5 is classified in its entirety as follows: subsection (a) to sections 47–708 and 47–709; subsection (b) to section 47–710; subsection (c) to section 47–711; subsection (d) to section 47–712, and subsection (e) to section 47–716.[5]

When section 5 of the Act of August 17, 1939, Title IX, 52 Stat. 372, which was an amendment to the District of Columbia Revenue Act of 1937, 50 Stat. 673, is compared with the codification in sections 47–709, 47–710, 47–711, 47–712, 47–716, and 47–2405 in the D.C.Code (1967), it is readily apparent that an error was made in the codification of section 47–2405. The last sentences of subsections (a), (b), (c), (d), and (e) of section 5, Title IX, 52 Stat. 372–374, all refer to "sections 3 and 4" of the Act of August 17, 1939, Title IX, 52 Stat. 371–372. "Sections 3 and 4" were codified in the D.C.Code (1967) as sections 47–2403 and 47–2404, respectively, and are properly cross-referenced in D.C. Code sections 47–709, 47–710, 47–711, 47–712, and 47–716. However, the first three paragraphs of D.C.Code section 47–2405,[6] which correspond to portions of sections 5(a) [§ 47–709], 5(b) [§ 47–710], and 5(c) [§ 47–711], respectively, instead of properly referring to section 47–2403 [i. e., section 3, 52 Stat. 371], are erroneously cross-referenced to sec-

tion 47–2413, which is the codification of section 14, which was added to the District of Columbia Revenue Act of 1937, in 1952. 66 Stat. 546. Under such circumstances, the statute, as enacted by Congress, is controlling and the erroneous references in D.C.Code § 47–2405 to § 47–2413 are supplanted by the correct references found in the Statutes at Large (52 Stat. 372–374).

1 U.S.C. § 204(b) (1970) provides:

In all courts, tribunals, and public offices of the United States, at home or abroad, of the District of Columbia, and of each State, Territory, or insular possession of the United States—

\* \* \* \* \* \*

[b] The matter set forth in the edition of the Code of the District of Columbia current at any time shall, together with the then current supplement, if any, *establish prima facie* the laws, general and permanent in their nature, relating to or in force in the District of Columbia . . . [emphasis supplied]

1 U.S.C. § 112 (1970) provides, *inter alia:*

\* \* \* \* \* \*

The United States Statutes at Large *shall be legal evidence* of laws, concurrent resolutions, treaties, international agreements other than treaties, proclamations by the President, and proposed or ratified amendments to the Constitution of the United States therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States. [emphasis supplied]

"The District of Columbia Code . . is a codification and compilation of existing statutes. The Act authorizing the

---

4. *See* Preface to D.C.Code (1967).

5. *See* Codification notes following D.C. Code § 47–2405 (1967).

6. The last two paragraphs of section 47–2405 are properly cross-referenced to sections 47–2403 and 47–2404 in the 1967 D.C.Code, thus they present no problem.

preparation and publication of this Code declares that the Code shall 'establish prima facie the laws' then in force. 'But the very meaning of "prima facie" is that the Code cannot prevail over the Statutes at Large when the two are inconsistent.' Stephan v. United States, 1943, 319 U.S. 423, 426, 63 S.Ct. 1135, 87 L.Ed. 1490 . . . ." Fisher v. Capital Transit Co., 100 U.S.App.D.C. 385, 387, 246 F.2d 666, 668 (1957). *See* Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 379–380, 78 S.Ct. 352, 2 L.Ed. 2d 340, rehg. denied, 355 U.S. 967, 78 S.Ct. 530, 2 L.Ed.2d 542 (1958); Murrell v. Western Union Tel. Co., 160 F.2d 787, 788 (5th Cir. 1947); Ashley v. City of Anchorage, 95 F.Supp. 189, 191, 13 Alaska 168 (D.C.Alaska 1951), aff'd., 196 F.2d 809 (9th Cir. 1952). Therefore, the erroneous cross-references in D.C. Code section 47–2405 to section 47–2413, instead of to section 47–2403, must be supplanted by references to section 47–2403, in order to conform them to the statute enacted as section 5 of the District of Columbia Revenue Act of 1937, as amended, as set out in the Statutes at Large [52 Stat. 372–374]. This is because section 3 of the same Act is codified as section 47–2403 of the D.C.Code, and not section 47–2413.[7]

7. A lawyer with a claim involving real estate taxes, examining the erroneous Code references to § 47–2413, would immediately know that something was wrong with these references, and that he would have to check the Statutes at Large, because § 47–2413 provides "that it shall not apply to the real estate tax."

8. D.C.Code § 47–501 (1967) provided:
   For the purpose of defraying such expenses of the District of Columbia as Congress may from time to time appropriate for, there hereby is levied for each and every fiscal year, a tax at such rate on the real and personal property subject to taxation in the District as will, when added to the other taxes and revenues of the District, produce money enough to enable the District to pay promptly and in full all sums directed by Congress to be paid by the District, and for which appropriation has been duly made; and the Commissioners of the District of

## II

"Assessments of real estate in the District of Columbia for purposes of taxation shall be made *annually* . . . ." D.C.Code § 47–702 (1967) (emphasis supplied). After the appropriate assessments are made, "there . . . is levied *for each and every fiscal year*, a tax at such rate" as is determined by the proper District of Columbia authority. D.C.Code § 47–501 (1967) (emphasis supplied).[8] *See* D.C.Code §§ 47–708 and 47–709. Once the tax is computed, notice of the established amount is sent to the prospective taxpayer.

*Annually* and subsequent to July 1, the assessor of the District of Columbia shall mail to the record owner of each lot or parcel of land upon which a real estate tax has been levied by the District of Columbia as of July 1 of the same year, a notice of the amount of *such real estate tax,* and of the manner in which the amount of such real estate tax is payable according to law; and such notice shall state whether there were any delinquent real estate taxes unpaid on July 1 of the year in which such notice is sent: . . . [emphasis supplied]

D.C.Code § 47–1001a (1967).

> Columbia hereby are empowered and directed to ascertain, determine, and fix annually such rate of taxation as will, when applied as aforesaid, produce the money needed to defray the share of the expenses of the District during the year for which the rate is fixed; and the Commissioners of the District shall, in accordance with existing law, cause all such taxes and revenues to be promptly collected and, when collected, to be daily deposited in the Treasury to the credit of the District for the purposes herein set out.
> Under § 402(363) of Reorganization Plan No. 3 of 1967, effective November 3, 1967, 32 F.R. 11669, F.R.Doc. 67–9507, the functions of the Board of Commissioners of the District with respect to ascertaining, determining, and fixing annually the rate of taxation under § 47–501, were transferred to the District of Columbia Council, subject to the right of the Commissioner of the District of

The appeal procedure which was in effect at all times relevant to the 1969 fiscal year provided [9]:

> Any person aggrieved by any assessment, equalization, or valuation made may within ninety days after October 1 of the year in which such assessment, equalization, or valuation is made, appeal from such assessment, equalization, or valuation in the same manner and to the same extent as provided in sections 47–2403 and 47–2404: *Provided, however,* That such person shall have first made his complaint to the Board of Equalization and Review respecting such assessment . . .

D.C.Code § 47–709 (1967). *See* D.C. Code § 47–2405 (1967), and discussion in Part I of this opinion, *supra.*[10]

D.C.Code § 47–2403 (1967), when read in conjunction with the declaration of section 47–709 (1967) requiring compliance with section 47–2403, provided [11]:

> Any person aggrieved by any assessment by the District against him of any . . . [real estate] tax or taxes, or penalties thereon, may, within ninety days . . . [after October 1 of the year in which such assessment is made], appeal from such assessment to the board, *provided such person shall first pay such tax,* together with penalties and interest due thereon, to the collector of taxes of the District of Columbia. . . . The board shall hear and determine all questions arising on said appeal and shall make separate findings of fact and conclusions of law, and shall render its decision thereon in writing. The board may affirm, cancel, reduce, or increase such assessment. [emphasis supplied] [12]

■ In the instant case, Taxpayers paid the first half of the real estate taxes

---

Columbia as provided by section 406 of the same Plan No. 3. This departmental organization was in effect at all times relevant to this case.

9. Section 161(a) (5) of the Act of July 29, 1970, Pub.Law 91–358, 84 Stat. 580, amended D.C.Code § 47–709 [and also § 47–2405] (1967) by striking out "ninety days" and inserting "six months" in lieu thereof. [Effective February 1, 1971] This timeliness amendment was made "because of the abolition of the alternate common-law remedies in U. S. District Court," which previously were available under D.C.Code § 47–2413(c) (1967). H.Rep.No.91–907, 91st Cong., 2nd Sess. 165 (1970). Section 161(a) (7) of the Act of July 29, 1970, Pub. Law 91–358, 84 Stat. 580, amended D.C. Code § 47–2413(c) (1967), by abolishing the availability of common law remedies.

10. Taxpayers properly invoked the aid of the Board of Equalization and Review concerning the real estate tax assessments challenged in this suit, before petitioning the District of Columbia Tax Court for relief.

11. D.C.Code § 47–2403 (1967) was amended by section 161(a) (3) of the Act of July 29, 1970, Pub.Law 91–358, 84 Stat. 579, to read as follows:
Any person aggrieved by any assessment by the District of any . . .

[real estate] tax or taxes, or penalties thereon, may within six months after payment of the tax together with penalties and interest assessed thereon, appeal from the assessment to the Superior Court of the District of Columbia. . . . The court shall hear and determine all questions arising on appeal and shall make separate findings of fact and conclusions of law, and shall render its decision in writing. The court may affirm, cancel, reduce, or increase the assessment.
The general reasons for the 1970 changes were provided in H.Rep.No.91–907, 91st Cong., 2nd Sess. 165 (1970) :
Section 161 amends various tax statutes of the District to reflect the exclusive jurisdiction of the Tax Division of the new Superior Court, to repeal provisions made obsolete by the transfer, and to allow six months, rather than ninety days, for filing tax cases because of the abolition of the alternate common-law remedies in U. S. District Court. There are no other substantive changes.
*See* note 9, *supra.*

12. By the Act of July 10, 1952, Pub.Law 82–493, Ch. 649, § 5, 66 Stat. 547, the Board of Tax Appeals was redesignated as the District of Columbia Tax Court. *See* D.C.Code § 47–2402 (1967).

levied for the 1969 fiscal year before petitioning the District of Columbia Tax Court, on December 30, 1968, for review of the underlying assessment. However, they did not pay the second half of the challenged taxes until March 26, 1969. The District of Columbia contends that the requirement of D.C.Code section 47–2403 (1967) that a taxpayer "shall first pay such tax" before appeal may be taken, required the payment of *all* of the tax based on the questioned assessment for the *entire tax year* in issue before the Tax Court could acquire jurisdiction. Taxpayers, on the other hand, maintain that D.C.Code § 47–1209 (1967),[13] which permits payments of real estate taxes in equal semi-annual installments in September and March, must be read in conjunction with section 47–2403 to have required only the prepayment of such tax as was *due* at the time the appeal was filed, as a prerequisite to the Tax Court's jurisdiction.

It is well established by our prior decisions that the prepayment requirement of section 47–2403 is jurisdictional. *See* District of Columbia v. McFall, 88 U.S. App.D.C. 217, 188 F.2d 991 (1951); Industrial Bank of Washington v. District of Columbia, 88 U.S.App.D.C. 233, 188 F.2d 46 (1951). In *Industrial Bank of Washington,* we held that where the second half of the tax in question had not been paid before the appeal was taken, the Tax Court was without jurisdiction concerning the second half. The question of whether the Tax Court had properly accepted jurisdiction in respect to the first half of the tax under such circumstances, was expressly not decided. *See* 88 U.S.App.D.C. at 234, 188 F.2d at 47. We now hold that the failure of Taxpayers to pay *all* of the challenged taxes levied for the *entire* fiscal year in question, prior to the time their appeal was filed, deprived the Tax Court of jurisdiction over any and all of the taxes in issue.

Under the applicable provisions of the D.C.Code, real estate assessments are calculated, and real estate taxes are levied, on an *annual* basis. *See* D.C.Code §§ 47–501, 47–702, 47–708, and 47–709. They are not determined semi-annually. When the appropriate real estate tax has been calculated, section 47–1001a requires *annual* "notice of the amount of *such real estate tax*" as has been "levied" to be sent to the taxpayer. The entire tax to be paid during the year is levied as a single sum. D.C. Form F.P.-176A (Rev. 3–68), which was sent to Taxpayers pursuant to section 47–1001a, expressly indicated that the bill covered the *entire tax year*. Although it indicated that, pursuant to D.C.Code § 47–1209 (1967), the tax obligation was payable in two equal installments, the first half by September 30, 1968, and the second half by March 31, 1969, this did not detract from the clear implication, expressed in the relevant statutory provisions, that the tax debt established by the levy covered the entire 1969 fiscal year. The "such tax" which section 47–2403 required to be paid before a taxpayer could protest the "assessment . . . against him" referred to the tax covered by the assessment. That was the total tax for the entire fiscal year because that was the only way any real estate tax was levied, *i. e.,* "levied for [the] fiscal year."[14] Also, the rate of taxation was an annual rate, *i. e.,* required to be fixed "annually."[15] The delinquency dates provided by section 47–1209 did not in any way affect the amount of tax that was to be paid. Section 47–1209 merely established optional grace periods which a taxpayer could utilize without incurring any delinquent liability.

While there is no legislative history concerning the prepayment provision in D.C.Code § 47–2403 (1967),[16] it is quite apparent that the language of section 47–1001a referring to *"such real estate tax"*

---

13. *See* note 2, *supra.*

14. *See* note 8, *supra.*

15. *Id.*

16. *See* H.Rep.No.2105, 75th Cong., 3rd Sess. 14–15 (1938) and S.Rep.No.1612, 75th Cong., 3rd Sess. 7 (1938).

to clearly cover the entire fiscal year's tax obligation, corresponds to the pertinent language contained in section 47–2403 (1967) requiring that a taxpayer "first pay *such tax*" before an appeal thereunder could be filed.[17] It necessarily follows that this jurisdictional requirement of section 47–2403 (1967) required the prepayment of the *entire* fiscal year's challenged tax, before an appeal involving the underlying assessment could properly be taken.

Other relevant revenue provisions of the D.C.Code support our interpretation. While section 47–2407 authorizes the Tax Court (now the Superior Court) to order the refund by the District of Columbia of any sum found to have been erroneously paid by the appealing taxpayer, section 47–2410 provides that "No suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax." [18] An action to cancel the tax assessed against certain real estate is, in actuality, one effectively seeking the enjoining of the assessment or collection of the tax in contravention of section 47–2410's prohibition. If a taxpayer were permitted to appeal his tax assessment before paying *all* of the tax levied for the entire year, any decision

concerning the unpaid portion would intuitively involve the cancellation of the determined over-assessment with respect to that portion. Any other result would clearly promote multiple litigation concerning each part of the challenged tax as it was paid.[19] Such multifarious litigation involving a non-economical utilization of judicial time could not have been reasonably intended by Congress.[20]

Court decisions involving closely related tax areas also support the decision we have reached. In Suhr v. United States, 18 F.2d 81 (3rd Cir. 1927), the court was called upon to determine whether a taxpayer could seek the refund of income tax payments claimed to have been erroneously paid, before payment of the entire amount of tax due for the tax year in question had been made. In finding that the taxpayer's action had been prematurely prosecuted, the Third Circuit Court concluded that "[t]he payment of a part does not confer jurisdiction upon the courts. . . . There is no provision for refund to the taxpayer of any excess payment of any installment or part of his tax, if the whole tax for the year has not been paid." 18 F.2d at 83. A similar result was obtained in Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165

17. We believe that our analysis would also apply to the new, but similar, language now found in section 47–2403, as amended by the Act of July 29, 1970. *See* note 11, *supra.*

18. Apart from D.C.Code § 47–2410, it is generally recognized that equity cannot be invoked to restrain the collection of a tax—the remedy of the taxpayer being to pay the tax and seek to recover the alleged over-payment. *See* United States Trust Co. v. District of Columbia, 48 App.D.C. 610 (1919) ; D. C. Transit System, Inc. v. Pearson, 102 U.S.App. D.C. 102, 250 F.2d 765 (1958). *See also* Dows v. Chicago, 78 U.S. (11 Wall.) 108, 20 L.Ed. 65 (1871).

19. Even the Tax Court recognized this problem, for it expressly provided, in its denial of the District of Columbia's motion to dismiss the action, that "the appeal will not be heard and determined until showing is made that the March in-

stallment of tax has also been paid, . . ." (Joint Appendix at 61.) While the Tax Court was aware of the problem presented by an appeal prosecuted prior to the full payment of all of the challenged tax, it unfortunately failed to recognize the fact that Congress had eliminated the possibility of such a problem through the prepayment requirement of section 47–2403.

Although the broad language contained in D.C.Code § 47–2403 appears to authorize the cancellation of a tax obligation on appeal to the Tax Court (now Superior Court), we believe that the specific provisions dealing with the authority of the court [*i. e.*, §§ 47–2407 and 47–2410] must control our disposition.

20. Where Congress desired to permit a tax appeal without prepayment of the tax in question, it expressly provided for such. *See, e. g.,* D.C.Code § 47–801e (1967).

(1958), aff'd on rehg., 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), wherein the Supreme Court held that a taxpayer must pay the full amount of an assessed income tax deficiency before he may challenge its correctness in a refund suit. *See also* Cheatham v. United States, 92 U.S. 85, 88–89, 23 L.Ed. 561 (1876). As was determined in these analogous decisions, since Taxpayers failed to pay *all* of the challenged taxes owed for the 1969 fiscal year, prior to the time they filed their appeal, the District of Columbia Tax Court was wholly without jurisdiction over any of the appeal. It therefore should have dismissed the entire action for want of jurisdiction.

■ A final point should be noted, concerning Taxpayers' contention that our interpretation of section 47–2403 (1967) effectively deprives them of the right of appeal, in violation of the Constitution's Due Process Clause. Before Taxpayers elected to invoke the appeal procedure provided for in sections 47–709, 47–2405, and 47–2403, they could have chosen to utilize the common law remedies which were expressly available under D.C.Code § 47–2413(c) (1967).[21] However, once they elected to file an appeal pursuant to sections 47–709, 47–2405, and 47–2403, they apparently lost their right to invoke the otherwise available common law remedies. *See* D.C. Code § 47–2413(c) (1967). *See also* District of Columbia v. Brady, 109 U.S.App. D.C. 324, 288 F.2d 108 (1960). While the Taxpayers may now be without a remedy, it is due to their own failure to comply with the jurisdictional requirements of section 47–2403 (1967), and *not* due to any deprivation occasioned by the statutory scheme itself.[22] Under these circumstances, we cannot conclude that the prepayment requirement of D.C. Code § 47–2403 (1967) visited any undue hardship upon Taxpayers. *See* Flora v. United States, *supra,* 362 U.S. at 175, 80 S.Ct. 630, 4 L.Ed.2d 623. As we noted in District of Columbia v. McFall, *supra,* 88 U.S.App.D.C. at 219, 188 F.2d at 993, "[a]lthough the provision appears to be harsh, we do not see how we can avoid giving it effect."

The decision of the District of Columbia Tax Court is reversed, and the case is remanded to the Tax Court with instructions for it to dismiss the petition for want of jurisdiction.

Judgment accordingly.

---

21. The availability of common law remedies was abolished by section 161(a) (7) of the Act of July 29, 1970, Pub.Law 91–358, 84 Stat. 580. However, to compensate for this change in the District of Columbia revenue law, the timeliness period for the filing of appeals was increased from ninety days to six months. *See* note 9, *supra.* Since the new provisions now permit an appeal to be filed any time before April 1, and since under section 47–1209, the second tax installment must be paid before the end of March of the same year, it is clear that an aggrieved taxpayer can now avoid the operation of section 47–2403's prepayment provision by simply waiting until the end of the installment and appeal-filing periods before taking the necessary action.

22. Our decision today is not the first one interpreting the meaning of section 47–2403's prepayment jurisdictional requirement. The identical question had previously been presented to the District of Columbia Tax Court and to this court in Greenstein v. District of Columbia, Tax Ct.Dec.Doc. No. 1785, *affd.,* without opinion, on February 13, 1963, D.C.Cir. No. 17,169. Today we merely reaffirm, and explain, the identical interpretation which evolved from the *Greenstein* case.