DISTRICT OF COLUMBIA, Appellant,

v.

BURLINGTON APARTMENT HOUSE
COMPANY, t/a The Burlington
Hotel, Appellee.

No. 7986.

District of Columbia Court of Appeals.

Argued en banc May 10, 1976.

Decided June 13, 1977.

Melvin J. Washington, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Christopher Sanger, Washington, D. C., for appellee.

Before REILLY, Chief Judge,* and KELLY, FICKLING,** KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

On January 29, 1976, a division of this court unanimously affirmed (with a minor arithmetical adjustment) the trial court's reduction of a real property tax assessment which had been made for fiscal year 1973. In the same opinion, by a vote of 2–1, the majority of the division reversed that aspect of the trial court's order which extended the reduced assessment to fiscal year 1974 (and future years, until a new assessment could be made) on the ground that the trial court lacked jurisdiction to do so. On April 23, 1976, we granted appellee's petition for rehearing en banc and vacated the January 29 decision. The question of the trial court's authority to apply the reduced assessment to 1974 and succeeding years has been reargued and reconsidered en banc. We now hold that the trial court's determination that its adjusted assessment constituted the lawful assessment "for all succeeding years until another valuation is made according to law" was correct and it is affirmed.

Appellee (hereinafter Burlington) is the owner of a parcel of land in the District of Columbia which is officially designated as Lot 97, Square 214. The land is improved by a structure known as The Burlington Hotel, and is located on Vermont Avenue, just south of Thomas Circle.

In February 1972, the District of Columbia issued an assessment of real estate taxes for fiscal year 1973 for the property. It was predicated upon a valuation of $92.30 per square foot. On March 27, 1972, Bur-

---

* Judge REILLY was Chief Judge of the Court at the time of oral argument; his status changed to Chief Judge, Retired, on September 27, 1976. He participated in all phases of the en banc disposition of this case.

** Judge FICKLING participated at oral argument, but died on March 6, 1977.

lington appealed to the District of Columbia Board of Equalization and Review. D.C. Code 1973, §§ 47–708, –709. *See* D.C.Code 1976 Supp., § 47–646.[1] Following a hearing, the Board issued an order reducing the fair market value of the land for tax purposes to $84.61 per square foot. Burlington then paid its 1973 real property tax liability, based on the Board's valuation, and filed a timely petition in the Superior Court contesting the Board's order. D.C.Code 1973, § 47–2403.[2]

In the petition filed in the trial court, Burlington challenged the Board's assessment as being based on an arbitrary and unfounded overvaluation of the fair market worth of the real estate. One of Burlington's expert witnesses testified that the fair market value of the property was $64.00 per square foot; the other placed it at $67.20. Each witness supported his conclusion by citing sales of properties of comparable size in similar downtown Washington locations.[3] The District's expert witnesses, relying upon different sales, disputed Burlington's evidence and conclusions on fair market value.

The trial court found that the District's assessment of Burlington's property was "ostensibly against the evidence and was erroneous, arbitrary, and unlawful." The court valued the property at $67.00 per square foot for fiscal years 1973 and 1974, and ordered the District to refund a tax overpayment of $15,308.72, with interest, within ten days of its order.

■ Preliminarily, we conclude—as did the division which originally considered this appeal—that the trial court was in error in directing the District to refund the overpayment within ten days of its order. D.C. Code 1973, §§ 47–1016 and –2407 control the refunding of taxes when it has been "finally determined" that such taxes were erroneously paid. The requisite finality is defined in § 47–2404 of the Code, and it is not satisfied by the mere lapse of ten days after the entry of the trial court's order.

■ The District also contends that it was error for the trial court to have excluded the evidence of a prior offer by Burlington to sell the property. The deposition of Burlington's president reflected that in 1972, he had authorized a possible sale of the property at $70.00 per square foot, and that subsequently the company had asked $75.00 per square foot. No option to purchase resulted from those offers. The District claims that an owner's asking prices should be allowed in evidence as admissions and as probative of fair market value.

While we accept that contention,[4] that evidentiary error was harmless in view of other testimony given at trial. The District

1. Substantial revisions of the statutory provisions affecting real property tax assessments were made in 1974. *See* District of Columbia Real Property Tax Revision Act of 1974, P.L. 93–407, §§ 401–29, 88 Stat. 1036 (effective July 1, 1975), D.C.Code 1976 Supp., §§ 47–641 to –646. We refer herein to the Code sections which are applicable to the instant litigation, since this case arose prior to the enactment of the present laws.

2. For convenience we define briefly some of the taxation concepts used in this opinion. The term "valuation" refers to both (1) the process by which the Board of Assistant Assessors determines and assigns a fair market value to a particular piece of real property, and (2) the amount so assigned as the value. *See* D.C. Code 1973, § 47–705. "Assessment" is the figure attained by multiplying the valuation, *i.e.*, the fair market value, by the debasement factor, the percentage of fair market value to which the tax rate is applied. *See District of Columbia v. Green,* D.C.App., 310 A.2d 848,

851 (1973). The assessment, *i.e.*, the assessed value, is the amount upon which the tax is levied "Equalization" denotes the process implementing the duty of the Board of Equalization and Review "to fairly and impartially equalize the value of real property made by the board of assistant assessors as the basis for assessment." D.C.Code 1973, § 47–708.

3. The District and Burlington agreed that the existing improvements on the land are of insignificant value, and that the hotel would have to be demolished for the land to be put to its "highest and best use."

4. *See United States v. Certain Land in Baltimore County, Maryland,* 209 F.Supp. 50, 56 (D.Md.1962); *Durika v. School District of Derry Township,* 415 Pa. 480, 203 A.2d 474 (1964); cf. *Mark v. City of Indianapolis,* 247 Ind. 511, 219 N.E.2d 434 (1966) (evidence of owner's asked rent admissible).

had presented other credible evidence on which the court could have based a finding that the value of the property exceeded the owner's asking price of $75.00 per square foot, had it been so persuaded.[5]

■ The District's next contention is that the trial court's valuation of the property at $67.00 per square foot is against the weight of the evidence. We are, of course, bound to accept the trial court's findings unless they are clearly erroneous. *District of Columbia v. Neyman,* 135 U.S.App.D.C. 193, 196, 417 F.2d 1140, 1143 (1969); *see* Super.Ct.Civ.R. 52(a). As we have stated, Burlington presented extensive expert testimony in support of a lower appraisal of the fair market value. In its findings of fact, the trial court indicated which sales of properties it considered relevant and persuasive evidence on the question of fair market value.[6] Based upon a consideration of those sales of comparable property and upon other relevant factors, such as the character of the neighborhood and its development potential, the court concluded that the market value of the property as of July 1, 1972, was $67.00 per square foot. In our judgment, the trial court's determination that the sales relied upon involved property comparable to the Burlington parcel and its ultimate finding of true market value were reasonable, supported by the evidence, and not clearly erroneous. Accordingly, we affirm the trial court's conclusion that the assessment to which Burlington was subjected was arbitrarily excessive and affirm the reduced assessment.[7]

The central issue which prompted our en banc consideration of this case was not, however, whether the trial court was correct in granting Burlington relief from an overly high assessment, but rather the proper scope of the relief to be awarded.

■ The relevant portion of the trial court's order stated that "the aforesaid reduced assessment . . . shall constitute the full and lawful assessment . . for District of Columbia fiscal year 1973, and, pursuant to District of Columbia Code § 47–709, for all succeeding years until another valuation is made according to law." It further ordered the District to "amend its official real property tax ledgers and other real property tax and assessment records pertaining to . . . fiscal years 1973 and 1974 to reflect the aforementioned reduced assessment."

The District argues that the trial court had no authority to award relief for any fiscal year other than 1973. That position is based upon the contention that Burlington did not comply with the requisite statutory provisions so as to confer jurisdiction upon the trial court over taxes for succeeding years. In further support of its argument, the District cites the principle that every tax year is a distinct entity. It also stresses that its evidence at the hearing was directed solely to fiscal year 1973.

We begin by clarifying what is not at issue in this case. Unquestionably there are jurisdictional prerequisites to the Superior Court's consideration of a taxpayer's challenge. *See* D.C.Code 1973, §§ 47–709,

---

5. Nonetheless, we agree with the trial court's observation that an unacted-upon offer to sell is not highly probative of true value in the context of an assessment proceeding. A landowner's offering price is likely to be exaggerated, as a starting point for bargaining. That, however, goes to the evidence's weight, rather than its admissibility.

6. Contrary to the District's assertions, the sales used by Burlington to support its estimated valuation were competent evidence so long as they did not result from foreclosure or other legal compulsion. *District of Columbia Redevelopment Land Agency v. 61 Parcels of Land,* 98 U.S.App.D.C. 367, 368, 235 F.2d 864, 865 (1956); *Baetjer v. United States,* 143 F.2d 391, 397 (1st Cir.), *cert. denied,* 323 U.S. 772, 65

S.Ct. 131, 89 L.Ed. 618 (1944). The motivations and circumstances of the sales go to the weight of the evidence, and not to its admissibility. *District of Columbia Redevelopment Land Agency v. 61 Parcels of Land, supra,* 98 U.S.App.D.C. at 369, 235 F.2d at 866.

7. Both parties agree that the trial court made a slight arithmetical error in its determination of Lot 97's total debased assessed value, due to the inadvertent inclusion of a small adjacent parcel owned by appellee. The property's final debased assessment value should be $1,846,868.40, and not $1,871,334.79 as stated by the trial court.

–2403, and –2404; D.C.Code 1976 Supp., § 47–646(i). *See also George Hyman Construction Co. v. District of Columbia*, D.C. App., 315 A.2d 175 (1974); *District of Columbia v. Berenter*, 151 U.S.App.D.C. 196, 466 F.2d 367 (1972). Prior payment of the tax assessed and due at the time of the filing of a petition in the Tax Division of the trial court is one such prerequisite. Under certain circumstances, the taxpayer first must complain to the Board of Equalization and Review before seeking relief in the trial court. It is undisputed that Burlington met all applicable requirements to invoke Superior Court jurisdiction over the challenged 1973 tax liability. The crucial inquiry concerns the legal effect to be accorded the trial court's modification of the Board's valuation until such time as the District undertakes a genuine reappraisal of the property.[8] All relevant authorities, including prior decisions of this court, the statutory structure, the trial court's rules of procedure, and traditional equitable principles, lead us to conclude that the trial court's valuation must constitute the continuing basis for taxation until there is a superseding valuation which has been made according to law.

In our view, the only reasonable construction of the statutory scheme dictates that once jurisdiction has attached in the trial court to consider the legality of a particular valuation, the court's valuation must remain binding until it is superseded by a lawful substitute. That the trial court has authority to review the valuation is made clear by D.C.Code 1973, § 47–709. *See* D.C. Code 1976 Supp., § 47–646(i). A statutory scheme which calls for the equalization of a valuation by the Board, which then vests power in the trial court to "affirm, cancel,

reduce, or increase the assessment", and finally, which provides that such a "valuation . . . shall constitute the basis of taxation for the next succeeding year and until another valuation is made according to law . . ." must be interpreted to contemplate that the valuation to be given binding respect is the one which has been finalized after all allowable means of administrative and judicial review have been pursued or waived.[9] Thus, a final judgment of the Superior Court on the lawful assessment of a particular property must be treated in the same manner as an equalized assessment from the Board, that is, it becomes the basis for taxation until a subsequent reassessment has been made according to law. Any other reading of the statutory scheme would result in a judicial subordination to the Board of Equalization and Review, the precise body over whose actions the court has been granted the power of review. Once the Superior Court has jurisdiction over a valuation pursuant to §§ 47–709 and –2403 of the Code, that jurisdiction is coextensive with the existence of the valuation itself.

■ This construction, in addition to flowing naturally from the language of the tax statutes, also avoids imposing a Sisyphean burden upon a taxpayer in Burlington's position. If we were to accept the District's argument, Burlington would be compelled to contest a particular assessment—already in the process of being shown to be unlawful—through the Board to the Superior Court in every successive fiscal year. Such a multiplicity of litigation on a single issue not only would be impractical and inequitable, but also has been deemed unwarranted by this court. In *Dis-*

---

8. Prior to the hearing on the contested 1973 assessment, Burlington received a notification from the District of the assessment on the property for fiscal year 1974. The figure thus conveyed was exactly the same as that which had been set for the previous fiscal year by the Board of Equalization and Review, which then was in the process of being disputed in Superior Court. It is clear that the 1974 figure was not based upon a reassessment utilizing updated sources of information, but rather was sim-

ply a routine repetition of the challenged 1973 assessment.

9. While § 47–2403 speaks literally of an "appeal from the assessment", an assessment is nothing more than a specified percentage of a property's valuation and has no viability separate and apart from the underlying valuation. The value of a property is the foundation of both an assessment and the amount of the tax levied upon such an assessment.

*trict of Columbia v. Green*, D.C.App., 310 A.2d 848 (1973), we held that when taxpayers can show that in reality they had no effective administrative remedy, the fact that they have "bypass[ed] the useless administrative procedure" will not deprive the trial court of the power to grant equitable relief. It is plain that any appeal to the Board concerning the 1974 assessment, based as it inevitably would have been on the identical arguments which the Board already had rejected in connection with the 1973 assessment, would have been a futile procedure which the taxpayer should not be penalized for bypassing. We do not believe Congress intended that a taxpayer should be required repeatedly to invoke an empty statutory pattern in order to seek and obtain adequate relief from the court. Additionally, once the trial court has acquired jurisdiction over a particular valuation (or assessment or equalization), that forum not only has the authority but also is obligated to "grant the relief to which the party in whose favor [the judgment] is rendered is entitled, even if the party has not demanded such relief in his pleadings." Super.Ct. Civ.R. 54(c).[10]

Of decisional significance is the fact that Burlington contested the entire valuation process, not merely a single tax payment. The term "valuation" entails more than a finite amount of money for a particular year. It encompasses the deliberative process of an administrative body culminating in a computation which has a legal effect beyond any one year, at least until the process is undertaken again in a subsequent year. It was this whole administrative course of conduct, its ultimate determination, and its binding effect—both presently and prospectively—from which Burlington requested relief and over which the trial court had jurisdiction. The court found that the valuation had been arbitrarily computed, and that it therefore was not legally usable as a basis for taxation. Under these circumstances, Rule 54(c) compelled the trial court's accommodation of Burlington for

years following 1973—until a new valuation was made.

█ Should additional justification for our holding be necessary, we believe it is found in the traditional and inherent powers of a court. As stated in *Hamilton National Bank v. District of Columbia*, 81 U.S. App.D.C. 200, 204, 156 F.2d 843, 847 (1946), "the whole case, both facts and law, is open for consideration." *See* D.C.Code 1973, § 47–2403. Necessarily the term "whole case" encompasses scrutiny of the valuation mechanics and the court's power to fashion effective relief from the computation procedure. While our reading of the District's tax statutes does not contravene the court's power to exercise its full authority, any conflict between the literal language of the Code and the trial court's duty to ensure the lawful and fair imposition of taxes must be resolved in favor of permitting broad trial court action. *See Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923).

█ Finally, where an assessment is based not upon a "valuation made according to law" but rather upon a figure determined by the court to be "erroneous, arbitrary, and unlawful," the figure thus rejected must be considered a mere nullity, incapable of valid future applicability. *See Hamilton National Bank v. District of Columbia, supra.*

We perceive no undue onus to the government resulting from our sustaining the trial court's granting of prospective effect to the reduced assessment. It requires the District to do no more than that which it already was statutorily required to do, that is, to make a new valuation of appellee's property according to law. This mandate forecloses continued reliance upon a figure judicially determined to be arbitrarily excessive, and the District may not validly contend that a new "valuation according to law" has been satisfactorily achieved by the mere mailing of a later notice of assess-

10. While we do not consider the fact that Burlington did not amend its petition specifically to include the 1974 assessment to constitute a specific failure to demand relief, the trial court is not limited in granting relief to that which a party formally has requested.

ment based upon the identical, voided figure. Congress surely envisioned a valuation process with more substance than that when it employed the statutory phrase "according to law."

In conclusion, we again note the trial court's minor error in arithmetical computation, *see* note 7 *supra*, and the premature granting of an immediate refund of the taxes erroneously paid. In all other respects, the order appealed from is affirmed..

*Affirmed as modified.*

KELLY, Associate Judge, with whom GALLAGHER and MACK, Associate Judges, join, concurring in part and dissenting in part:

After a full hearing as to an assessment for fiscal year 1973, the trial court reduced the Board of Equalization and Review's equalized assessment of appellee's property and provided in its order that "the aforesaid reduced assessment . . . shall constitute the full and lawful assessment . . for District of Columbia fiscal year 1973, and pursuant to District of Columbia Code 1973, § 47–709,[1] for all succeeding years until another valuation is made according to law." The decision as to fiscal year 1973 has full support in the evidence and I agree it should be affirmed. Even before this evidentiary hearing, however, another valuation of appellee's property had been made according to law for fiscal year 1974 which, under the statutory scheme in effect at the time,[2] had become final some months before the court's decision. Review of that valuation had thus been foreclosed six months in advance of the court's ruling because of appellee's failure to follow the mandatory statutory procedures to contest the 1974

assessment, or even to file a simple amendment to its petition pending in the Tax Division of Superior Court to include a refund request for fiscal year 1974.[3]

The statutory scheme for relief from allegedly inaccurate fiscal year assessments is found in D.C.Code 1973, §§ 47–709, –2403, and –2404, and the administrative remedies outlined there must be exhausted before a taxpayer may pursue court action. Sections 47–709 and –2403 provide that where the assessment for the following fiscal year is received before March 1, or after March 1, but without an increase in valuation, a complaint must be made to the Board of Equalization and Review which sits from January 1 through April 1 for that particular purpose (D.C.Code 1973, § 47–708). If such complaint is made and adversely decided the taxpayer may, after all taxes for the entire fiscal year are paid, appeal to the Superior Court after October 1 and for the six months following. Where, however, there is an increase in valuation and notice in writing is received after March 1, a complaint to the Board is unnecessary. An appeal can then be taken to the Superior Court, after all taxes for the fiscal year have been paid, beginning October 1 and for sixth months following.

In the instant case, notice of the fiscal year 1974 assessment of $2,332,400.00 was received by appellee sometime after March 27, 1973, and was identical in amount to the Board's equalized assessment for fiscal year 1973.

The statutory scheme does not require by its terms that real property be revalued each year, but it does require a designation of value for the tax rolls and notification of that value to the taxpayer.

---

1. D.C.Code 1973, § 47–709, provides:

    The valuation of the real property made and equalized as aforesaid shall be completed not later than the first Monday of May annually. The valuation of said real property made and equalized as aforesaid shall be approved by the Commissioner of the District of Columbia not later than July 1, annually, and when approved by the Commissioner shall constitute the basis of taxation for the next succeeding year and until another valuation is made according to law . . . . .

2. The timetable for establishment, notice, and appeal of real estate assessments was substantially revised by the District of Columbia Real Property Tax Revision Act of 1974, P.L. 93–407, §§ 401–29, 88 Stat. 1036 (effective July 1, 1975).

3. Since the pleadings were not amended, no testimony was taken on the 1974 assessment.

A majority of the en banc court, at the urging of appellee, concludes without basis that because the fiscal 1974 assessment of appellee's property was the same as the equalized figure for fiscal 1973, no subsequent valuation of the property was made according to law.[4] There is, of course, no testimony of record from which such a conclusion could be drawn. Moreover, it is incorrect to say, as does the majority, that the trial court found the fiscal 1974 assessment figure "erroneous, arbitrary and unlawful." It would be error if it had in view of the lack of any testimony with respect to that year.

The majority also turns to the "traditional and inherent powers of a court" to bolster its holding in this case. That phrase, without so stating, is of course an obvious reference to a court's traditional and inherent power to grant equitable relief. The fact is, however, that appellee is pursuing a statutory remedy and seeks no relief in equity if, indeed, any such relief is available. Additionally, the statute which spoke to the scope of judicial review in *Hamilton National Bank v. District of Columbia*, 81 U.S.App.D.C. 200, 156 F.2d 843 (1946), upon which the majority relies, differed in one significant aspect from that under which this suit is brought. In *Hamilton National Bank v. District of Columbia, supra* at 204, 156 F.2d at 847, the court said:

> Our power to review its [Board of Tax Appeals] decisions is "as under the equity practice in which the whole case, both facts and law, is open for consideration", —"the scope of a review of an equity court." . . . [Footnote omitted.]

In an earlier case the Supreme Court spoke with some wonder of the statute, saying, in *District of Columbia v. Pace*, 320 U.S. 698, 701, 64 S.Ct. 406, 407–408, 88 L.Ed. 408 (1944):

> The provisions for review of Board of Tax Appeals decisions present complexities almost as baffling as the test of taxability itself. Section 4(a) of the Act

creating the Board of Tax Appeals for the District of Columbia provides that its decisions may be reviewed by the Court of Appeals and that upon such review the court "shall have the power to affirm, or if the decision of the board is not in accordance with law, to modify or reverse the decision of the board, with or without remanding the case for hearing, as justice may require." 52 Stat. 371, D.C.Code 1940, § 47–2404(a). Had this been all, a strong case would be made for applying the rule of finality applicable to the Federal Board of Tax Appeals, now the Tax Court of the United States. *Dobson v. Commissioner*, 64 S.Ct. 239, decided December 20, 1943. However, the same organic act contains another and qualifying provision that is not to be found in the acts creating the Tax Court: "The findings of fact by the board shall have the same effect as a finding of fact by an equity court or a verdict of a jury." 52 Stat. 371, D.C.Code 1940, § 47–2404(a). Since findings of fact by an equity court and the verdict of a jury have from time immemorial been subject to different rules of finality it is puzzling to know what the draftsmen of this section meant by including both in the one rule for reviewing Board of Tax Appeals findings. Since D.C.Code 1973, § 42–2404(a) had no such provisional language when this case arose, the *Hamilton* case is inapposite.

In *District of Columbia v. Green*, D.C. App., 310 A.2d 848, 852–53 (1973), we stated that in "exceptional and extraordinary" circumstances (deliberate discrimination between members of one class of property owners), equitable relief could be sought to enjoin the assessment of a tax. However, the facts of this case are such that resort to equitable relief is inappropriate. Appellee had an adequate remedy at law to contest his 1974 assessment but failed to invoke the jurisdiction of the Superior Court. *See also District of Columbia v. Keyes*, D.C.App., 362 A.2d 729 (1976).

---

4. D.C.Code 1973, § 47–705, provides:

Said Board of Assistant Assessors shall, from actual view and from the best sources of information in its reach, determine the value of each separate tract or lot of real property . . . . .

The time sequence here, while it may be unusual, did not preclude appellee from complaining of the 1974 assessment to the Board of Equalization and Review and, had it been unsuccessful, paying the tax and appealing to Superior Court. Appellee's failure to meet the jurisdictional requirement is, in my judgment, decisive to the invalidity of the court's order with regard to fiscal year 1974.[5]  *District of Columbia v. Keyes, supra; George Hyman Construction Co. v. District of Columbia*, D.C.App., 315 A.2d 175 (1974); *District of Columbia v. Berenter*, 151 U.S.App.D.C. 196, 466 F.2d 367 (1972).

I would affirm the trial court's decision relating to fiscal year 1973, and reverse as to fiscal year 1974.

**5.**  Rule 54(c) hardly permits the trial court to grant relief precluded by statute.