**DISTRICT OF COLUMBIA, Appellant,**

v.

**NEW YORK LIFE INSURANCE CO., et al., Appellees.**

No. 93–TX–255.

District of Columbia Court of Appeals.

Argued Oct. 6, 1994.

Decided Nov. 21, 1994.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellant.

Gilbert Hahn, Jr., with whom Tanja H. Castro, Washington, DC, was on the brief, for appellees.

Before FERREN, TERRY, and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

The District of Columbia appeals from an order of the trial court reducing the assessed value of commercial property in downtown Washington, D.C. for the tax year 1988 from $33,661,876 (as found by the Board of Equalization and Review (BER)), to $28,661,876. The judge concluded that the BER's decision was based on its apparent adoption of a typographical or copying error in the taxpayer's submission to the BER. In that submission, the taxpayer had represented the value of the land to be $18,700,000, rather than the assessed value of $13,700,000.[1] Believing that this apparent error was the basis for the BER's decision, the judge determined the value of the property by simply subtracting $5,000,000 from the BER's valuation. He declined to entertain expert testimony proffered by the District as to actual value.

■ We conclude that, in basing his conclusion on what he believed to be the BER's

---

1. The judge apparently assumed that a "3" had been miscopied as an "8".

intent, the trial judge considered and decided the wrong question. Tax Division proceedings are entirely *de novo*. The court's task is not to conduct a review of agency action. Rather, the court must make an independent valuation of the property on the basis of the evidence presented at trial. We have held that

> [w]hen a taxpayer appeals to the Superior Court, the case is subject to de novo evaluation. D.C.Code § 47–3303.... [O]nce the trial court has acquired jurisdiction over a particular valuation, ... the whole case, both facts and law, is open for consideration.

*Rock Creek Plaza–Woodner Ltd. v. District of Columbia*, 466 A.2d 857, 859 n. 1 (D.C. 1983) (quoting *District of Columbia v. Burlington Apartment House*, 375 A.2d 1052, 1057 (D.C.1977) (en banc)) (brackets in original; ellipses added); *see also Wolf v. District of Columbia*, 611 A.2d 44, 47 (D.C.1992) (*Wolf II* ); *Washington Post Co. v. District of Columbia*, 596 A.2d 517, 521 n. 2 (D.C. 1991).

There are several reasons for requiring the trial court to make its valuation on the basis of record evidence rather than by reviewing the BER decision. The BER exists to give the taxpayer an informal and speedy opportunity to be heard before an assessment becomes final. We are advised that proceedings before the Board are neither transcribed nor recorded. Moreover, they are often non-adversarial; assessors sometimes fail to appear to defend their assessments. A taxpayer who is dissatisfied with the Board's informal resolution is entitled, as a matter of right, to a *new* valuation, which is to be made through a formal, adversarial, and judicial process before the Superior Court.

In the present case, the taxpayer contends that the trial judge's valuation must be sustained because it was consistent with the "official assessment" by the Department of Finance and Revenue (DFR). This contention is based upon the testimony of Troy Davis, a DFR assessor, who had originally assessed the property at $49,133,000. At the trial, Davis testified that according to the "assessment record card," which contained entries based on the BER's disposition of the taxpayer's administrative appeal, the assessed value of the property was $28,661,876. He accepted the suggestion that this figure represents the "official assessment."

Adroitly seizing upon Davis' testimony, counsel for the taxpayer now points out that, during the trial, the taxpayer accepted the $28,661,876 assessment. Citing *Wolf v. District of Columbia*, 597 A.2d 1303 (D.C.1991) (*Wolf I* ), for the proposition that "[a] taxpayer bears the burden of proving that an assessment is incorrect or illegal," *id.* at 1311, the taxpayer contends that the *de novo* fact-finding process comes into play only if the taxpayer disputes the "official assessment," which is no longer the case here. Accordingly, says the taxpayer, Davis' most recent assessment—$28,661,876—must stand.

The point now asserted on behalf of the taxpayer, however, was not at issue in *Wolf I*. That case, which is explicated by Judge Ferren in his concurring opinion, stands for the proposition that if the taxpayer cannot establish that the assessment is incorrect or illegal, then *the taxpayer* is bound by it; the assessment stands as to him. It is the party that failed to carry its burden that is denied a remedy. *Wolf I* did not hold that, during an ongoing *de novo* proceeding before the Superior Court, the taxpayer can preclude *the District* from presenting its evidence simply by belatedly agreeing to a revised assessment. The taxpayer's failure to show defects in an assessment—the situation which *Wolf* addressed—cannot logically have adverse consequences for *the District* (which is the taxpayer's adversary).[2]

---

**2.** Moreover, the statute provides that the Mayor's "approved assessment roll shall constitute the basis of assessment for the forthcoming fiscal year." D.C.Code § 47–825(g) (1990). Although that roll is not in evidence because, according to Davis, the computer system "only goes back three years," it is undisputed that the BER determined that the value of the property was $33,-

661,876. Davis acknowledged that he did not understand how the "official assessment" came to be $28,661,876, and he agreed with the judge that the process was "irregular." Under these circumstances, the notion that the official assessed value of the property was $28,661,876 rests on a shaky foundation.

Once the case has come before the Superior Court, the District is entitled to attempt to establish that the value of the property is in excess of the assessed value. *See* Super.Ct.Tax R. 11(d); *Wolf I,* 597 A.2d at 1312; *cf. id.* at 1317 (concurring opinion). In spite of counsel's resourceful attempt to exploit Davis' testimony, the taxpayer cannot be permitted to eviscerate the District's rights.

For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

FERREN, Associate Judge, concurring:

I agree with the court's disposition but write separately to make clear why—contrary to appellee's contention—this court's opinion in *Wolf v. District of Columbia,* 597 A.2d 1303 (D.C.1991) (*Wolf I*), does not dictate the result in appellee's favor.

In *Wolf I,* a *de novo* proceeding, the taxpayer sought to prove that the 1986 assessment was too high and should remain at the 1983 level; the District sought to show that the 1986 assessment was too low and should be approximately $3 million higher than originally imposed because new information supplied by the taxpayer in its refund petition actually justified an even higher assessment. In taking this position, the District abandoned its original assessment only to the extent that the new information supplied by the taxpayer indicated a higher figure; the District never repudiated its original data or legal theory. The court sustained the original 1986 assessment, rejecting both the taxpayer's and the District's contentions. Thus, although the court upheld the original assessment, the proceeding was entirely *de novo,* with the District proving that the 1986 assessment should be at least at the originally issued level and the taxpayer failing to prove that it should be lower.

Contrary to the taxpayer's contention in the present case, *Wolf I* does not stand for the proposition that the taxpayer can abort a *de novo* proceeding (absent a settlement) by agreeing mid-trial to the original assessment; indeed, in *Wolf I,* had the trial court agreed with the District's position that the 1986 assessment should have been increased by $3 million, there is no indication that the taxpayer could have forced the District and the court to accept the original, lower assessment by the taxpayer's simply "giving up" before judgment.