Morton A. BENDER, et al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 01–TX–914.

District of Columbia Court of Appeals.

Argued April 9, 2002.
Decided April 25, 2002.*

---

* The opinion in this case was originally issued in the form of an unpublished Memorandum Opinion and Judgment. It is now being published on the motion of the Corporation Counsel. We note that this court has made certain clarifying additions and modifications.

Mark E. Brodsky, Bethesda, MD, for appellants.

Mary T. Connelly, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before STEADMAN, RUIZ and WASHINGTON, Associate Judges.

STEADMAN, Associate Judge:

■ Appellants challenge the trial court's judgment that set appellants' Tax Year 1999 real property tax assessment for their principal residence at 2838 McGill Terrace, NW, Washington, D.C., Square 2200, Lot 832 at $3,184,000. After an extensive trial with stipulated expert witnesses for both the District and the taxpayers, the trial court entered an order carefully analyzing the various contentions and upholding the District's position. "In an appeal from a decision of the Tax Division in a civil tax case, we adhere to the standard of review applicable to other decisions of the Superior Court in civil cases tried without a jury. We will not disturb the factual findings of the trial court unless they are plainly wrong or without support in the record." *Brisker v. District of Columbia*, 510 A.2d 1037, 1040–41 (D.C. 1986) (citations omitted); *see also* D.C.Code § 17–305(a) (2001). We see no basis to overturn the trial court's conclusion.

■ Appellants' claim in essence comes down to whether the trial court erred in accepting the District's revised $3,184,000 assessment.[1] The District's expert witness, James Vinson, testified that he relied on the replacement cost approach to assess the market value for the subject property.[2] Appellants offered no evidence that the resulting valuation of $3,184,000 under this approach was incorrect. The challenge was to the District's choice of appraisal methodology. Appellants' expert, Richard Haase, testified that the sales comparison approach was the preferred methodology for valuing single family residences. Haase also stated that the cost approach was less reliable than the sales comparison approach for appellants' house because 1) the residence was 67 years old and not a new house, and 2) appellants' property was not unusual enough to merit a replacement cost valuation. Vinson responded in part that although the house was 67 years old, it was completely gutted and renovated and should be viewed as a five—to ten-year-old house. He also testified that the cost approach was a widely accepted appraisal approach for appropriate single family residences.

■ While a judge of the Tax Division "may not 'arbitrarily reject' expert testimony, the judge 'may adopt the rationale

---

1. The trial court correctly noted that appellants had not shown the initial Tax Year 1999 assessment of $2,912,000 was incorrect or illegal. Likewise, on appeal appellants do not directly attack this initial assessment. *See Wolf v. District of Columbia*, 597 A.2d 1303, 1312 (D.C.1991) (taxpayer bears burden of proving District's initial assessment is incorrect). "Once the case has come before the Superior Court, the District is entitled to attempt to establish that the value of the property is in excess of the assessed value," *District of Columbia v. New York Life Ins. Co.*, 650 A.2d 671, 673 (D.C.1994), and the trial court has the power to increase the assessment. *See* D.C.Code § 47–3303 (2001).

2. As will be discussed *infra*, Vinson also relied on a sales comparison approach as a check.

of one testifying expert over the other, or even disregard the conclusions of both.'" *Wolf v. District of Columbia*, 611 A.2d 44, 47 (D.C.1992) (citation omitted). We can find no fault with the trial court's decision to credit the District's expert testimony that the cost approach was an appropriate method for valuing appellants' quite distinctive property.[3] "[A] taxpayer bears the burden of proving that an assessment is incorrect or illegal, not merely that alternative methods exist giving a different result. [Appellants] may be correct that [the sales comparison approach] is generally the best method for valuing [single family residences,] 'because it is most similar to the analysis made by knowledgeable buyers before they purchase' such a property. Here, however, [appellants have] not shown that the reasons given for [relying on the replacement cost] approach were irrational or unfounded." *Safeway Stores, Inc. v. District of Columbia*, 525 A.2d 207, 211 (D.C.1987) (citations omitted).

█ Appellants' unsuccessful challenge to the District's decision to use the replacement cost approach as well as their failure to successfully attack the resulting valuation is arguably dispositive of their appeal. However, in addition, the trial court credited the valuation produced by

Vinson's sales comparison approach over that of Haase's and gave a lengthy explanation for doing so.[4] Appellants' most significant challenge to the trial court's reliance on Vinson's sales comparison valuation relates to Vinson's alleged application of the same value per square foot for below-ground (basement) space as to above-ground space. The record is somewhat unclear as to whether, during his sales comparison valuation, Vinson applied only one value to both types of space or whether he instead calculated separate values for each category and then combined these totals to produce a single averaged value per square foot. Regardless of how these calculations were made, we cannot say that the trial court's reliance on the resulting valuation was plainly wrong, especially when Vinson testified as to the quite unusual nature of this particular basement space[5] and otherwise explained his sales comparison process.

*Affirmed.*

---

3. As described in the trial court's findings, appellants' home is "a two and one half story plus basement stone/stucco dwelling resembling a French chateau which was built in 1931 and gut-renovated in the 1990's. The home has eight bedrooms, nine full baths, and three half baths. The above-grade floors contain 8,394 square feet of gross living area, and the basement contains 2,646 square feet of gross living area. The basement is fully finished, fully furnished and completely carpeted. It has a separate exit to the rear of the premises where the patio and in-ground pool are located. The quality attributes of the [house], that is, its material, design, and workmanship are of the highest order." The lot, which contains 20,284 square feet, is located "in the Massachusetts Avenue Heights

neighborhood, . . . a neighborhood of embassies and upper tier residential properties."

4. Using a sales comparison approach, Vinson valued the property at $3,179,520, compared to Haase's $2,200,000.

5. Vinson pointed out that the square footage of the basement "is bigger than most houses in the District of Columbia. There is an enormous amount of space in that basement that's finished, and it's finished every bit as well as the space on the second floor of that house." Earlier in his testimony, he had observed that "the basement finish is substantial. . . . It is not like a rec room. It is very high quality finish. It is—you couldn't really tell that you

are in a basement when you are in the base-     ment." See also note 3, *supra*.